JACKSON, ex dem. FOWLER *vs.* LOOMIS.

A verdict will not be set aside as against evidence, unless it be decidedly against the weight of testimony submitted to the jury.

Where, after the lapse of 48 years, *fifteen* witnesses testified that a soldier who served in the revolutionary army survived the war, and *one* testified that he fell in battle during the war, *whose testimony was corroborated by documentary evidence,* IT WAS HELD that the testimony thus corroborated was entitled to more credit than that which rested solely in the memory of witnesses; and a verdict having been found that the soldier died during the war, the court refused to grant a new trial.

*It seems,* however, that neither upon this testimony would a new trial have been granted, had the verdict been for the *plaintiff* instead of the *defendant.*

THIS was an action of ejectment, commenced in August term, 1829, tried at the Oswego circuit in June, 1831, before the Hon. NATHAN WILLIAMS, then one of the circuit judges.

The premises claimed were lot No 57, *Hannibal,* alleged to have been granted to *James Fowler,* the lessor of the plaintiff, for his services as a soldier during the revolutionary war. On the part of the plaintiff, was produced in evidence an exemplification of letters patent, bearing date 13th September, 1790, granting the lot in fee to *James Fowles,* and also an exemplification of the *ballotting book* relating to military lands, from which it appeared that *James Fowler* was a private in *Jansen's company* of the *first regiment* of New-York state troops and that he died 22d December, 1781. It was also proved by *fifteen* soldiers of the revolutionary army, that they knew James Fowler to belong to Jansen's company, that he was in the service at the close of the war, and on the disbandment of the army, in June, 1783, was regularly discharged. The defendant then exhibited the *ballotting book,* compiled from Connolly's original return of *soldiers who served during the war,* in which

NEW-YORK,
May, 1834.

Jackson
v.
Loomis.

the name of *Fowler* or *Fowles* was not found, but under the head of *dead of the several regiments* was found the name of *James Fowles*. In the same book were entries that lot No. 57, *Hannibal*, (or township No. 2,) had been drawn to *James Fowles*, and that the letters patent for the lot had been delivered to Mr. Connolly, for the administrator of the soldier. On an exemplification of Connolly's *original return of dead of the several regiments* was found the name of *James Fowles*, describing him as a private in Jansen's company, first regiment, with a remark accompanying, that he *died 22d December*, 1781. A *muster roll* of Captain Jansen's company for July and August, 1780, was proved by Col. Fish, who at that time was inspector of the New-York regiments, in the line of the army of the United States: upon which appeared the name of *James Fowles* as a private. The *pay roll* of the first regiment, for the year 1781, was also produced, upon which appeared the name of *James Fowles, of Jansen's company*, and opposite thereto the words, " died 22d December, '81, and 11 mo. 22 days." A witness for the defendant testified that he, as an *ensign* in the army, in the year 1778, enlisted a soldier of the name of *Fowles* to serve during the war, and that such soldier subsequently belonged to Jansen's company; four other witnesses testified that they knew a soldier of the name of Fowles, and one of them proved that he fell in battle in the autumn of 1781. The principal question submitted to the jury was whether *James Fowler* or *James Fowles*, by whatever name he might be known, was living, or whether he died in 1781. The jury found a verdict for the *defendant*, and a new trial is asked for on the part of the plaintiff.

*N. P. Randall* for the plaintiff.

*B. Davis Noxon & J. A. Spencer*, for the defendant.

*By the Court*, SAVAGE, Ch. J.    Whatever was the name of the soldier, it is clear that the name *Fowles* appears on the pay rolls; and there is no reason to doubt but that the same person was called *Fowler* by his messmates. The question which the jury have passed upon is whether this soldier died

in 1781, or whether he survived the revolutionary war and is now alive. The documentary evidence shews his death, and that his pay stopped on the day he was returned by Connolly to have died. *Fifteen* witnesses testify that he lived at the close of the war and was discharged. They may be mistaken; they swear to a fact which happened 48 years before the trial, and which they had no particular interest in remembering. The returns of Connolly were made out at the time, as was also the pay roll, and the patent was issued in 1791, to a person representing himself to be the administrator of the soldier. If the soldier survived, it is strange that he should have waited more than 30 years before inquiring about his land; and after so many trials, wherein his identity has been questioned; if living, it might reasonably be expected that he would be produced.

The question was proper for the jury. Had their verdict been the other way, as it was in *Jackson* v. *Ames*, on testimony very similar, it would not have been disturbed; so here, the jury having found for the defendant, and the testimony being contradictory, it should not be disturbed. In cases like this, the verdict should not be set aside, unless decidedly against the weight of evidence. In this case, if the balance is in favor of the plaintiff, it is so only in consequence of the number of his witnesses. The character of the testimony produced for the defendant being documentary, existing at the time the event is supposed to have happened, or shortly thereafter, entitles it to more credit than evidence resting in the memory of men during so great a length of time.

New trial denied.