Rood *v.* New-York and Erie Railroad Company.

---

Rood *vs.* The New-York and Erie Railroad Company.

A person in possession of land, under a contract to purchase the same, is deemed the equitable owner of the premises, and may maintain an action to recover damages for an injury occasioned by setting fire to the woods and fences.

Where the owner of land conveyed a strip thereof to a railroad company, for its track, the value of which did not exceed $60, and received therefor $1600; *Held*, that it might fairly be presumed that in making such conveyance the grantor must have contemplated the risk of injury to his remaining lands by fire, from engines running on the road.

Where a grantor conveys a certain definite parcel of land, for the purpose of con-

Rood *v.* New-York and Erie Railroad Company.

structing a railroad, out of a much larger parcel retained by him, the grant is subject to all the consequences necessarily attendant upon such a use of the same; and particularly such as would result from the running of engines, and the consequent exposure of property, on his adjacent land, to such injury and loss as would naturally result therefrom.

Hence the railroad corporation, while in the exercise of its appropriate business, is only responsible to the grantor of the land for ordinary care and diligence, in the manner of using its road.

And if, while the railroad company is in the lawful pursuit of its legitimate business, a fire is communicated to the grantor's remaining lands, by a spark from the engine, by which he sustains damage, it is *damnum absque injuria*, and the company will not be mulcted in damages, unless upon proof of negligence.

It is a well known and reasonable rule, in construing a grant, that when a thing is granted, all the means to attain it, and all the fruits and effects of it, are granted also.

An authority to use a steam engine, for the purpose of propelling cars upon a railroad, is an authority to emit sparks therefrom; and if the most approved means which science and skill have invented are applied to prevent sparks from causing injuries, the railroad company is not liable in case damage is occasioned by fire, communicated in that manner.

Where the plaintiff's woods were set on fire, and injured, by sparks from an engine upon the defendants' railroad, and it appeared that the defendants had placed the most approved spark-arresters upon their engines, to prevent, as far as possible, the emission of sparks; that the engines were as well secured and arranged, to guard against the communicating of fires, as were the engines on any railroad in use; that they had provided a sufficient police, for the road, and adopted all needful and prudent rules for their guidance; and that the company was not guilty of any negligence; *it was held* that the defendants were not liable.

THIS was an appeal by the defendants, from a judgment entered upon the report of a referee. The opinion of the court contains all the material facts.

*Wheeler & Freeman,* for the plaintiff.

*N. K. Wheeler,* for the defendants.

*By the Court,* MASON, J. This is an action brought to recover damages of the defendants for the burning of the plaintiff's woods and fences, by sparks communicated from the defendants' engines while running upon their road. The evidence upon which the plaintiff seeks to charge the defendants with

liability, consists simply in the proof made by persons who were at work at some distance from the place where the fire was first discovered, and upon the opposite side of the Susquehanna river, and who testified that they saw a train of cars pass, and from 5 to 10 minutes thereafter saw the fire where it first broke out, and that it then occupied but a very small space. That the fire commenced inside the railroad fence, and was burning in the leaves which lay upon the ground, and that it spread thence to the premises of the plaintiff, and burned over something near 100 acres of land, destroying the timber. That it was a very dry time in the month of May, and that the wind was blowing quite briskly at the time. It was also proved that the defendants' engines emit sparks, which are carried, many times, several rods before they strike the ground; that these sparks are generally thrown back upon the track of the road, and seldom are carried beyond the bounds of the road, which is six rods in width. It was also proved that these sparks are so liable to communicate and set fires upon the bridges of the defendants' road that the defendants have stationed track-men upon the road, a portion of whose duty it is to see that the bridges are kept secure from fire. It was also proved that the defendants had placed the most approved spark-arresters upon their engines, to prevent, as much as possible, the throwing of sparks. And the referee has found the fact, in his report, that the defendants' engines are as well secured and arranged, to guard against communicating fires, as are the engines on any railroad now in use. It further appears from the evidence in the case, that the defendants have placed a section-master over their road, at this point, who has charge of nine miles of the road, and whose business it is to keep the track in repair, and guard against accidents of every kind, and keep a look-out for fires, and to go with men and put them out. That at that season of the year this section-master had three regular watchmen under him for this section of nine miles of the road, whose duty it was to go over the road, once or twice a day, generally, and see that the track was in order, &c. It appears that this section-master went over the road the day of the fire in question, and he says, one of his du-

ties is, to put out fire if he discovers any. It appears that one Welch was watchman where the fire occurred, and that his beat was about four miles in length. It does not appear from the evidence in the case, whether he went over his section that day or not. It appears that at the time of this occurrence, there were five trains a day passing over the defendants' road at this point. Upon this evidence the referee found that the plaintiff's woods were fired by sparks emitted from the defendants' engine while passing over their road; that the engines on the road used by the defendants have spark-arresters to prevent, as much as possible, the throwing of sparks, and that they were as well arranged as on any railroad now in use. The referee found that the defendants had provided a good police for the road, and had provided sufficiently in this respect, but that the orders and directions of the company were not carefully carried out by these agents, and that the damage to the plaintiff resulted from the want of that care and prudence which the defendants, by their agents, ought to bestow, and might have been prevented if these agents had been attentively engaged in their proper places at the time; and that no track-man passed over this section of the road or was seen upon it that day, except the section-master of that section; and upon this ground the referee held the defendants liable.

It appears from the evidence in the case, that the plaintiff was in the possession of the lot in question under a written contract of purchase from Darius Maples, the owner in fee. The plaintiff by this contract of sale is deemed the equitable owner of the premises; (6. *Ves. R.* 349, *note A.* 15 *id.* 138. 2 *Story's Eq. Jur. p.* 628, *sec.* 789, 790, 1212. 6 *John. Ch. R.* 403. 3 *id.* 316. 1 *Barb. S. C. R.* 495. 11 *Paige,* 359. 6 *Barb. R.* 571;) and as such is entitled to maintain this action. The case of *Gardner* v. *Heartt,* (2 *Barb. S. C. Rep.* 165,) is in point, to show that, in such a case, title is not necessary. The law is well settled that the vendee in possession, being the equitable owner of the estate from the time of the contract for sale, must bear any loss which may happen to the estate between the agreement to purchase and the conveyance. He must pay the purchase money, although the estate itself be destroyed.

(1 *Sugden on Vendors,* 115, 213, 276, 277, *and cases there cited.*) The loss in question is therefore the loss of the plaintiff and not of Maples. This is enough, certainly, to entitle the plaintiff to maintain this action, against a wrongdoer, who makes no claim of title. The rule is a familiar one, that possession is sufficient to maintain trespass *quare clausum fregit,* against a mere wrongdoer. That one in actual possession of lands may maintain trespass against any other person who does not show title in himself, or another authorize him. (9 *Bacon's Abr.* 458, title *Trespass,* C. 3. 3 *Burr. R.* 1563. 1 *East,* 244. 11 *Id.* 65. 4 *Taunt.* 547. 5 *Barn. & Ad.* 600. 5 *Bing.* 7. 4 *Pick.* 305. 14 *id.* 299. 3 *Metcalf,* 237.)

The next and more important question to be determined in this case is, did the referee err in holding the defendant liable upon the evidence in the case? It appears from the case that Maples conveyed to the defendants a strip six rods wide, through these premises, for their railroad track, being about six acres of land, for the price of $1600. The highest estimate placed upon the value of these lands with the timber thereon, by any of the witnesses, is $10 per acre. It is therefore fairly to be inferred that the defendants paid for their right of way all damages which could be legitimately claimed for a right of way for such purposes. The statute under which the defendants were authorized to acquire lands for their road, provides, in terms, for ascertaining the damages which the owner of such lands or real estate will sustain by the occupation thereof by the said corporation. (*Laws of* 1832, *ch.* 224, § 9.) The language of this statute is broader than the Massachusetts statute ; (*R. Stat. ch.* 39, § 56,) under which it has been held that the exposure to fire from the engines of the company, and the increased insurance upon buildings situated near the line of the road, are proper subjects to be taken into consideration, in estimating the damages for land taken for a railroad. (2 *Metcalf,* 147. 3 *Cush. R.* 107.) Be that however, as it may, under the statute, when the damages are assessed, I take it to be very clear that as Maples owned all of these lands at the time he conveyed this strip to the defendants, and as he conveyed a strip, the value of

which did not exceed $60, and received therefor $1600, it is but fair to presume that in giving his deed to the defendant he must have contemplated the risk of fire from engines running on the road. (*Babcock* v. *The Western Railroad Company*, 9 *Metc. Rep.* 553. *Lyman* v. *The Boston and Worcester Railroad Co.*, 4 *Cush. R.* 288.) Such, it seems to me, is but a reasonable construction of such a grant. The grantor having conveyed a certain, definite parcel of land for the purpose of a railroad, out of a much larger parcel retained by him, the grant is subject to all the consequences necessarily attendant upon such a use of the same, and particularly, such as would result from the running of engines, and the consequent exposure of property on his adjacent land to such injury and loss as would naturally result therefrom. It is a well known and reasonable rule in construing a grant, that when any thing is granted all the means to attain it, and all the fruits and effects of it, are granted also. (*Shepherd's Touchstone*, 89. 9 *Metcalf*, 536.) It follows, therefore, from the just construction of such a grant, that the railroad corporation, while in the exercise of their appropriate business, are only responsible to the grantor for ordinary care and diligence in the manner of using their road. It is not denied that the defendants, at the time this accident occurred, were in the lawful pursuit of their legitimate business. If therefore, the plaintiff has been injured, it is *damnum absque injuria*, and the defendants are not to be mulcted in damages, unless, upon proof of negligence on the part of the defendants or their agents. This, the evidence in the case utterly fails to establish. There is not the first particle of evidence in the case showing any negligence whatever in the running of this engine and train of cars, that is supposed to have caused this injury. Negligence is not to be inferred, but must be proved. The evidence, on the contrary, shows that the most extraordinary pains were taken by the defendants to prevent injuries to lands through which the defendants' road passes, from the emission of sparks from the engines. To this end they have furnished their engines with the most approved spark-arresters now in use, and have arranged them so as to prevent as much as possible the escape

of sparks.   To this end, they have supplied their road with sectional superintendents, section-masters and subordinate watchmen, whose business it is to traverse every section of the road, at least once a day; and that their watchmen have allotted to them sections of four miles each, and the section-master over them only having charge of nine miles of road.   The referee finds that in both these respects the defendants are free from all negligence, but he finds the defendants liable, because, as he says, these servants or agents of the defendants did not faithfully perform their duty in the present instance, to the particular part of the road where this fire occurred.   Now I affirm there is not the first particle of evidence in the case from which any such conclusion can be drawn.   There is an apparent absurdity in the finding of the referee in this case.   He acquits the defendants of all negligence in the construction, and guarding of their engines to prevent fires, and also in their supply of sufficient police and the regulations which the company had imposed upon them in guarding and inspecting their road, and yet the whole police regulations in this respect consisted in the section-master passing over his nine miles once a day, and the watchman passing over his four miles once in every twenty-four hours; while the evidence in the case shows that the section master did pass over this very section of the road that day, and saw no fire; while the case is entirely destitute of all evidence to show whether or not the watchman over this four miles performed his duty in passing over the road, or not.   There is no evidence in the case from which to impute negligence, unless we go the whole length, and say that the law will impute negligence from the existence of fire, alone, and the omission of the defendants to have their agents upon the spot to extinguish it. Under such a rule it would be impossible for the defendants ever to escape liability.   It would in effect make the defendants insurers against losses, resulting from this cause, of all the property upon the line of their road; a degree of liability which in England, or this country, the law has never charged upon these corporations.   (*Yenser* v. *The Phil. and Reading Railroad Co.,* 8 *Barr's Penn. R.* 366.   *Aldridge* v. *The Great Wes-*

*tern Railway Co.*, 3 *Man. & Gr.* 575 ; 42 *Eng. Com. Law R.* 272.) The case of *Yenser* v. *The Phil. and Read. Railroad Co.*, (8 *Barr*, 466,) is a case very much like the one under consideration. A verdict was obtained without proof of negligence and the court set it aside, holding that negligence was not to be inferred from the act of setting a fire from sparks from the engines, where the usual and approved spark catchers were placed upon the engines. It was held by the court in the case of *Moshier* v. *The Utica & Sche. Railroad Co.*, (8 *Barb.* 427,) that an authority to use a steam engine for the purpose of propelling cars upon a railroad is an authority to make a noise, whether it awakens fear or not. Upon the same principle it must be held that an authority to run a steam engine for such purpose, is an authority to emit sparks therefrom ; and if the most approved means which science and skill have invented are applied to prevent sparks from causing injuries, I do not see upon what principle these railroad companies can be made liable. I do not think that upon any principle of law negligence can be imputed to the defendants, upon the evidence in this case. It can hardly be expected that the defendants can provide men of sufficient speed to chase up every engine that passes over their road, and see that every spark of fire which may escape from the engine is caught and extinguished. It would be a herculean task to arrest them all, prone as are sparks to fly upwards. Such a rule, imposed upon these corporations, would be a burthen greater than they could bear. Running as do their engines at all hours of the day and night, with trains of cars almost constantly passing and repassing with a speed that defies and baffles all human efforts to keep pace with them, it would be impossible for them ever to escape liability, under such a rule. The great error of the referee, in the case under consideration, consists in inferring negligence from the simple fact that the fire was communicated, and that none of the agents of the defendants whose duty it was to look after fires, presented themselves in time to extinguish the flames, and drawing this inference, too, after the fact was found that the defendants had properly guarded their engines, and had furnished a sufficient police, and adopted all prudent

rules and regulations, as to their duties, which are needful in the case. Now the section-master has nine miles of road, and the watchman four, to guard and protect, and which he is required to traverse and inspect at least once every day : and if negligence is to be imputed to these servants simply from the fact that they were not present to extinguish the fire, what shall we say of the plaintiff, who is proved to have been at work the whole of this day of the fire, within 60 or 80 rods of the place where this fire was communicated, and within sight of the same ? Most certainly if negligence is to be imputed to a section-master who has nine miles of road to look after, and a dozen men to superintend ; or if negligence is to be imputed to the watchman who has four miles of road to watch and guard and with five trains a day passing over the road, and with varied duties to perform, then most certainly negligence in the present case should be imputed to the plaintiff for not discovering and extinguishing this fire and preserving his property. I am of opinion, for the reasons above stated, that the judgment should be reversed, and a new trial granted.

This case was tried before the referee upon the assumption that the law casts upon the defendants the necessity of keeping a watch and a sufficient police upon their road to protect the interests of property holders along the line of the road from injuries of this character, and we have considered the case upon this assumption. We do not mean, however, to express any opinion upon that question, but to leave the question open.

                                   Judgment reversed.

[Tioga General Term, May 9, 1854, *Gray, Shankland* and *Mason,* Justices.]