# N. Y. SUPERIOR COURT.

## John S. Trenor agt. James S. Jackson.

The defendant being the lessee for a term of years of premises occupied by him as a grocery store, on the corner of Sixth avenue and Forty-eighth street, New York, the lease containing a covenant by the defendant that " he will not make any alterations therein without the written consent of the party of the first part, under the penalty of forfeiture and damages ; " and the plaintiff (lessor) alleged that the defendant was about constructing a wooden shed, or what he called an "awning," entirely around the two sides of said building, which, if erected, would greatly injure the value of the rest of the building for the purposes for which it was used, for flats and tenement apartments for families, praying for an injunction restraining the defendant from further proceeding with such erection, &c.

*Held*, that although the covenant in the lease alleged to have been broken is that the defendant will not make any alterations *in* the demised premises, the word "*in*" is to be taken as including *upon* as well, so that the covenant may read "*alterations in or upon*," and cover the erection which the defendant has annexed to the building.

The fair construction of the covenant, therefore, is that the lessee shall not make any alteration of the premises, so as in any respect to change them from the condition they were in when he made the covenant, without first obtaining the consent of his landlord. Such a covenant is reasonable and proper.

But although the acts of the defendant must be regarded as a violation of his covenant, yet they are not sufficient to authorize the exercise of the restraining power of the court.

The injury to the plaintiff's rights or interests are not irreparable, or such as cannot be probably satisfied at law. The damages for the breach are capable of being ascertained, and a recovery of such damages at law would be a satisfaction, and would cover the continuance of the injury, as well as the present damage.

But another remedy at law is provided. Under the terms of the lease the lessor has reserved the right to re-enter for covenants broken, and may maintain his action to recover possession of the demised premises

Trenor agt. Jackson.

Where the remedy or remedies at law are adequate, a court of equity will not exercise jurisdiction.

But the plaintiff has shaped his case so as to bring it within equity recognition by alleging that the structure is being erected by the defendant upon one of the public streets of the city of New York, without lawful authority, and is injurious to the private interests of the plaintiff.

The defendant, conceding that the erection in question, if erected without lawful authority, would be a public nuisance, and if found to be injurious to any private rights, would be amenable to the restraining power of the court, at the suit of such private person, rests upon the permission granted to him by the commissioner of public works, June 7, 1873, to erect just the shed or awning contemplated, which permission will undoubtedly justify the acts of the defendant, if the power is vested in the city to give such permission.

A purpresture, or even a public nuisance, cannot be predicated of the exercise of lawful authority, and this brings to consideration the question involving the power of municipal authorities of the city, to allow or permit the erection and continuance of what, without the requisite power to permit, would be a public nuisance.

It is enough for the purposes of this question that the city holds the fee *in trust*, and cannot, without the amplest authority, divest its use or allow its use to be divested from the exclusive public use.

It is very clear that a trust created by law, for a strictly public purpose, cannot be divested from such purpose and converted into a private use.

No case can be found which admits a power in the legislature to legalize the use of a public street for private purposes.

In the present case the appropriation of a part of one of the public streets of the city is for an exclusively private purpose.

It cannot, therefore, be claimed, that such use of the street is not inconsistent with the fullest use, or that it is for a public purpose. The corporation holding the streets in trust for the public, have exceeded their powers in attempting to authorize such appropriation and the erection and continuance of the structure complained of is without authority of law.

An appropriation of a part of a public ride by an individual, without grant, is a nuisance; so a continued incroachment upon a street.

The private and peculiar injury to the plaintiff is sufficiently manifest. The effect of the structure is sufficiently manifest.

*Special Term, February,* 1874.

MOTION to continue injunction.

The plaintiff is the lessee for a term of ten years from May, 1870, of the premises on the south-east corner of Sixth

avenue and Forty-eight street, in this city, and known as numbers 842, 844, 846 and 848 Sixth avenue. Upon and covering the whole premises is a five-story building, the first story of which is occupied by the defendant as a grocery store, and the stories above are separated into eleven flats or suits of apartments, intended and used as family residences, and is let by the plaintiff to separate and different families, who are now occupying the same.

In March, 1871, the plaintiff let to the defendant the store part of said building for a term of nine years from May, 1871.

The lease contains a covenant by the defendant that he will not " make any alterations therein without the written consent of the party of the first part, under the penalty of forfeiture and damages."

The complaint then alleges that the defendant has commenced, is continuing and threatens to finish the construction of a large wooden shed, " which he calls an awning," entirely around said building, with the exception of the door-ways leading to the upper part thereof. That such shed is being so constructed as to form a covering from the building at the height of the store, extending to the curb-stone in the street on that portion of the premises fronting on Sixth avenue and on Forty-eighth street, thus entirely intercepting the view of the side-walks from any of the windows of the building above the shed, and also obstructing a view of the streets from many of the windows.

The erection and continuance of such shed, the plaintiff alleges, will greatly injure the value of the building for the purposes for which they are now used, and impede and hinder the renting thereof, and that already several of the tenants thereof have declared that they will remove therefrom if such erection is continued and completed.

Upon these facts a preliminary injunction was granted restraining the defendant from completing the shed, with an order to show cause why the injunction should not be made permanent during the pendency of the action.

Upon the return of the order, the defendant, by his answer, averred that the awning which he proposes to erect is the kind of awning usually erected in front of stores such as that occupied by him. He denied that such erection was an alteration in the premises leased by him. He further denied the plaintiff's allegation of injury to the other parts of the premises, or that it would obstruct the view or impede the renting thereof.

In his affidavit the defendant averred that it is considered proper to have wooden awnings in order to protect the goods in the store from the effect of the sun in the summer; that the awning posts are not larger than an ordinary lamp post with the postage box attached, and do not obstruct the street as much as such lamp posts; *that they were erected under the direction of the city authorities,* and are not a nuisance and do not obstruct walking along the side-walks so much as the ordinary lamp posts.

The affidavit of the carpenter stated that he was erecting the awning in the usual manner of constructing wooden awnings in this city. That the only alteration made was in screwing a cleet along the front part of the building, which can at any time be unscrewed. He further stated that the awning was being erected pursuant to a permit granted by the city and under the inspection of a city inspector.

The permit is as follows:

### 180

### Awning (wood)—Permit.

DEPARTMENT OF PUBLIC WORKS,
BUREAU OF INCUMBRANCES, No. 237 Broadway.
NEW YORK, *June 7,* 1873.

Permission is hereby granted to James S. Jackson, of Nos. 846 and 848 Sixth avenue, of New York city, to erect a wooden awning in front of the premises known as Nos. 846 and 848 Sixth avenue, in said city, according to law and ordinances, viz.: Posts not to exceed nine inches in diameter. Cross rail

Trenor agt. Jackson.

not to exceed seven inches in width or height. Cross rail not to exceed four inches in thickness. Posts to be placed next to and along the inside of the curb-stone.

Rail on upper side not to be less than eight nor more than ten feet in height above the sidewalk. Cross rail to be strongly mortised through the upright posts. Said awning to remain only during the pleasure of the commissioner of public works.

GEO. M. VAN NORT,
*Commissioner of Public Works.*

E. B. SHAFER,
*Superintendent of Incumbrances.*

R. H. HUNTLEY, *for plaintiff.*
ALBERT MATHEWS, *for defendant.*

MONELL, *J.*—The grounds upon which the plaintiff claims to hold the injunction in this case are, *first,* that the acts of the defendant are in violation of his covenant; and, *second,* that the erection of the wooden shed is a public nuisance, or at least a purpresture, injurious to the private interests of the plaintiff.

The covenant alleged to have been broken is that the defendant will not make any alteration *in* the demised premises, and it is claimed that the erection of the shed, being outside the building, is not an alteration *in* the building. But I think that too narrow a construction of the covenant. It appears that the structure rests upon, and is secured to a cleet, fastened or screwed to the front of the building, running along its entire front and side, and forming partly the support to the shed. To sustain this cleet the screws have necessarily been inserted into the front of the building, and to that extent, taken in a literal sense, it is an alteration *in* the building. But I think "*in*" is to be taken as including *upon,* as well, so that the covenant may read "*alterations in or upon*" and cover the erection which the defendant has annexed to

Trenor agt. Jackson.

it.   Such undoubtedly was the intention of the parties; otherwise *any* alteration of the exterior of the building would be no breach, and the tenant could remove the entire front of his store and work serious injury to the building under claim that it was not an alteration " *in* " the building.

The fair construction of the covenant, therefore, is that the lessee shall not make any alteration of the premises, so as in any respect to change them from the condition they were in when he made his covenant, without first obtaining the consent of his landlord.   Such a covenant is reasonable and proper.   It is for the protection of the owner against any misuse by his tenant, and in aid of his remedies for injury to his property.

Although I regard the acts of the defendant as violations of his covenant, yet I do not think them sufficient to authorize the exercise of the restraining power of the court.

The injury to the plaintiff's rights or interests are not irreparable or such as cannot be probably satisfied at law. The damages for the breach are, I think, capable of being ascertained, and a recovery of such damages at law would be a satisfaction, and would cover the continuance of the injury as well as the present damage.

But another remedy at law is provided.   Under the terms of the lease the lessor has reserved the right to re-enter for covenants broken, and may maintain his action to recover possesion of the demised premises.

Where the remedy or remedies at law are adequate, a court of equity will not exercise jurisdiction.

The plaintiff, however, has shaped his case so as to bring it within equity recognition, by alleging that the structure is being erected by the defendant, upon one of the public streets of the city of New York, without lawful authority, and is injurious to the private interests of the plaintiff.

It was conceded by the defendant's counsel that the erection of the shed or awning in question, if erected without lawful authority, would be a public nuisance; and if found to be

injurious to any private rights, would be amenable to the restraining power of the court, at the suit of such private person.

Conceding this, the defendant rests upon the permission derived from the city authorities, which, undoubtedly, will justify his acts, if the power is vested in the city to give such permission.

A purpresture, or even a public nuisance, cannot be predicated of the exercise of lawful authority, and this brings me to the consideration of the question involving the power of municipal authorities of this city, to allow or permit the erection and continuance of what, without the requisite power to permit, would be a public nuisance.

It is claimed that the authority is derived from the charter of 1870 (*Sess. Laws* 1870, *chap.* 137), which provides that "the common council shall have power to make, continue, modify and repeal such ordinances, regulations and resolutions as may be necessary to carry into effect any and all the powers now vested in or by this act conferred upon the corporation * * * and to make such ordinances * * * in the matters and for the purposes following * * * * *

10. To regulate the use of the streets and side-walks for signs, sign posts, *awnings, awning posts* and horse troughs."

The Sixth avenue and Forty-eighth street, upon which these premises are situated, were taken by the city authorities under the provisions of the act of 1813, which declares that the city "shall become and be seized in fee" of all such lands so taken (*Valentine's Laws* 1198). But the seizin or title of the city is qualified, however, by the further provision "*in trust, nevertheless.* That the same be appropriated and kept open for or as part of a public street, avenue * * * forever, in like manner as the other public streets, avenues * * * in said city are and of right ought to be."

In *The People* agt. *Kerr* (27 *N. Y. R.*, 188) this qualified or restricted fee in the city is said to be more than was supposed to be needed by the public in the case of ordinary

roads.    But the court say (*p.* 197) that "the interest or estate thus conferred upon the city is limited and not absolute, limited by the purposes of the grant, notwithstanding the broad language of the statute."    Again, "The grant is expressly upon trust for a public purpose, that the lands may be appropriated and used forever as public streets.    The title conferred upon this public agent is wholly for public purposes, and not for profit or emolument of the city.    *    *    *    The city has neither the right nor the power to apply any such property to other than public uses, and those included within the objects of the grant."    This trust is for the benefit of the general public, not for the adjacent proprietors alone, nor of the inhabitants or citizens of New York alone; but of the whole people.    In *Drake* agt. *Hudson R. R. R. Co.* (7 *Barb.*, 508) this limitation of title is fully recognized.

The right to condemn private property to public use is one of the highest prerogatives of the sovereign power.    It is conferred in all organic laws, and is inseparable from the functions of government.    But its exercise is carefully controlled within the limits of a public necessity, and hence when such public necessity for its exercise is apparent everything in the nature of private interest must yield (*Salus populi suprema lex*).

While, therefore, the public necessities may incite the action of the sovereign power to condemn to its use the private property of its citizens, it can only be done for the purposes required; and when such purpose ceases, or the public necessity no longer exists, the property taken may, and in some cases does, revert to the original owner, as where land was taken under the railroad act of 1848.    The railroad company acquired it only *during the continuance* of the corporation (*Laws* 1848, *p.* 228, § 20; *Mahon* agt. *N. Y. Cent. R. R.*, 24 *N. Y. R.*, 658).    Whether in the event of the disuse of a public street in this city, which had been appropriated under the act of 1813, the land would revert to the original owner or his assigns, it is not necessary here to inquire.

Trenor agt. Jackson.

It is enough, for the purposes of this question, that the city holds the fee *in trust*, and cannot, without the amplest authority, divest its use or allow its use to be divested from the exclusive public use.

The principle which exhibits or limits the exercise of the legislative power over private property must necessarily carry us to the extent that after having exercised the right for the purpose and in the manner prescribed by the constitution of the state, it cannot afterwards appropriate property thus taken, either wholly or in part, to private uses.

Such a right is not found in the organic law, and is opposed by its letter and spirit.

The public necessity ceasing, the original right of the sovereign to repossess the lands would cease also, and the doctrine of reverter might well apply. So long as the public remain in the exclusive enjoyment of the franchise or property the title acquired through the exercise of the right of eminent domain will, of course, continue; but whenever such exclusive enjoyment is interrupted by private use, however sanctioned, the purposes of the grant are defeated.

In *Drake* agt. *Hudson R. R. R. Co. (supra)* the power of the corporation over the streets of the city was held to be such that it could grant permission to a railroad company to use a portion of the streets for a railroad track. But the decision rests wholly upon the ground that such use is not inconsistent with the common or public right. "It was not," the court says, "incompatible with the trusts of public streets and the simultaneous use of those streets by other carriages and vehicles, and for all the purposes to which streets are dedicated." But the court fully sustains the right of the public to the full and free use of the streets, and of individuals whose tenements front upon them. There is nothing in that case which sanctions any use of the public streets for merely private purposes. Such use is distinctly repudiated and denied.

So far as the power of the corporation over the subject is

sustained by that decision, it must be regarded as overruled by the two latter cases of *Davis* agt. *The Mayor &c.* (14 *N. Y. R.*, 506); *and People* agt. *Kerr* (27 *id.*, 188). In the case of *Davis* it was held that the use of a public street for a railroad *was* incompatible with the public use; and in the *Kerr* case, although the inconsistency of use was denied, the court found no power in the corporation to make the grant, but sustained the grant by the legislature.

It is claimed that the power given by the charter to pass ordinances for the regulation of the use of the side-walks for awnings, &c., necessarily *implies* a power to allow or permit the erection and continuance of awnings by individuals for private purposes.

The difficulty with this position is that, even if it was competent for the legislature to give such power, it is not given by any express terms, and being subversive of a clear public right, it cannot and should not be implied. It is, I think, very clear, that a trust created by law for a strictly public purpose, cannot be divested from such purpose and converted into a private use. But even if it can be, at all, it must be done by express enactment, and never can be inferred from or as being incidental to other powers.

In *Davis* agt. *The Mayor, &c.* (*supra*), the corporation had, by resolution, given authority to the railroad company to construct their railroad in and upon the streets of the city.

That resolution was passed under the charter of 1849, which did not contain the words found in the charter of 1870. But judge Denio, after overruling *Drake* agt. *Hudson R. R. R. Co.*, and holding that a railroad was distinguished from every other species of way, says (*page* 517), that for such reason "the establishment of such a road is not within the jurisdiction conferred upon the corporation over the roads and streets in that city," and that, therefore, "the resolution of the common council granting the right was without the scope of the powers of the corporation, and was wholly unauthorized and illegal."

In the *People* agt. *Kerr* (*supra*), the court, while sustaining the power of the legislature over the subject, was compelled to adopt the principle decided in the *Drake* case, and to limit the decision in the *Davis* case to the single point of authority in the common council to make the grant, and the court there held that because the use by a railroad was not inconsistent with the public use, and further, that as a railroad was, at least to some extent, a *public* use, the *legislature* might lawfully allow its construction.

In the recent case of *Kellinger* agt. *The Forty-second Street, &c., R. R. Co.* (50 *N. Y. R.*, 206), the plaintiff sought to restrain the company from using their track in front of his premises. In reviewing the several decisions, the court makes from them all the general deduction that railroads being for a *public use* were within the uses to which the streets may be devoted; the court say : " The fee being in the public, the legislative authority can lawfully consent to modify, regulate or enlarge its uses *for the benefit of the public.*"

Whatever may be the conflict of decision as to the use by a railroad being inconsistent with the public use (and the following may be referred to as exhibiting such conflict: *Drake* agt. *Hudson R. R. R. Co., supra ; Davis* agt. *Mayor, supra ; People* agt. *Kerr, supra ; Baldwin* agt. *Mayor*, 2 *Keyes*, 387, 417; *Craig* agt. *Rochester, C. and B. R. R. Co.*, 39 *N. Y. R.*, 404), all the cases place their decisions upholding the *legislative* power upon the ground either that it is not an inconsistent use, or that it is a public necessity, and therefore a taking for public use. Without one or the other of these elements no case that I can find admits a power in the legislature to legalize the use of a public street for private purposes.

In the case before me, the appropriation of a part of one of the public streets of the city is for an exclusively private purpose.

The defendant and not the public will derive the benefit and advantage from the structure. He says it is needed to protect the goods in his store from injury by the sun, but it does not appear that he does not intend to also use the sidewalk beneath it as a mart for the exhibition and sale of his goods, nor does it appear that some other and less objectionable kind of awning might not be used.

It cannot, therefore, be claimed that such use of the street is not inconsistent with the public use or that it is for a public purpose. The corporation, holding the streets in trust for the public, have exceeded their powers in attempting to authorize such appropriation, and the erection and continuance of the structure complained of is, in my judgment, without authority of law.

Any use of a public street is compatible with the public use, if unauthorized by law, whatever may be its degree, is a public nuisance.

An appropriation of a part of a public ride by an individual, without grant, is a nuisance (*Hoyt* agt. *Mayor*, &c., 9 *Wend.*, 571). So a continued encroachment upon a street, though for the purpose of carrying on a lawful business, is unjustifiable (*People* agt. *Cunningham*, 1 *Den.*, 524; *and see Moshier* agt. *N. and S. R. R. Co.*, 8 *Barb.*, 427; *Hecker* agt. *N. Y. Bal. Dock Co.*, 13 *How. Pr. R.*, 549; *People* agt. *Vanderbilt*, 24 *id.*, 301). In *Irvin* agt. *Wood* (4 *Robt.*, 138) an opening in a side-walk (coal slide) for private purposes was held to be a nuisance.

Any person who sustains a private injury from the erection or continuance of a public nuisance may maintain an action.

In *The People* agt. *Kerr* (*supra*) the court says (*p.* 193): "Any person who suffers a private and peculiar injury from the commission of a public nuisance may maintain his own individual action for redress or prevention of the wrong." And in *Davis* agt. *The Mayor*, &c. (*supra*), it is said to be "well-settled that when such an offense occasions or is likely to occasion a special injury to an individual, which cannot well

be compensated in damages, equity will entertain jurisdiction of the case at his suit.

The private and peculiar injury to the plaintiff is, I think, sufficiently manifest. The effect of the structure erected by the defendant is to deprive the plaintiff, in part at least, of the beneficial enjoyment of his property. And any unlawful interruption of or interference with the full and free enjoyment of another's property, by creating or continuing a public nuisance, renders such person amenable to an action. It is not necessary that it should be hurtful to health or noxious to the senses; if it interferes with the comfortable enjoyment of life or of property, it becomes a nuisance, abatable at the suit of private persons.

It has been urged that an authority in the corporation can be found in its long and very frequent exercise of the power in different parts of the city. But judicially I cannot admit the force of this. If the corporation has not the power, the assumption of it, in any number of instances, will not create such power. It must be found to exist outside of its own practice and precedents.

It is also suggested that the process of injunction should be withheld, because neither the owner of the fee nor the actual occupants complain. It is enough, I think, that the plaintiff is sustaining injury by the defendant's unauthorized act. He has a right to complain, and I think I have shown that he is not bound to resort to an action at law for damages.

The case in this court, of *Masterson* agt. *Short*, having been decided one way, on the motion for an injunction (3 *Abb. N. S.*, 154), and the other way on the trial of the action (7 *Robt.*, 241, 299), it creates no embarrassment in the decision of this case.

A part of the relief sought is a compulsory judgment requiring the removal of the structure. Such relief could not be obtained at law.

My examination of the questions upon this motion has led to the conclusion that the permission, granted by the corpora-

Trenor agt. Jackson.

tion of New York to erect the shed or awning upon one of the public streets of the city, is and was not authorized by law. That being erected in such place, without sanction of law, it is a public nuisance, and, as such, being injurious to the private interests of the plaintiff, he is entitled to a continuance of the injunction.

The fear expressed by the defendant's counsel, that a decision adverse to the defendant might disturb a very large number of similar structures, even if it was well grounded, could not influence the decision in this case. But I do not think there is much ground for it. It is only by a person specially injured that an action will lie. Such cases are and must be very few.

Motion to continue injunction granted, with costs.