FERO *v.* THE BUFFALO AND STATE LINE RAILROAD COMPANY.

A railroad company running an engine through a village where wooden buildings are so near the track as to be exposed to fire from the sparks, is bound to a higher degree of care than when running in the open country.

When the exposure of the buildings is increased by reason of a wind blowing towards them from the engine, which is standing at rest upon the track, the corporation is responsible for the utmost vigilance and care.

Under such circumstances, and after the law had been stated in effect as above, an instruction to the jury that the plaintiff could not recover if the engine was in good order, of proper construction, and used with ordinary care, was properly refused.

The owner of an unfinished building thus exposed is bound to the use of such care as a man of ordinary prudence would employ under the circumstances; but does not forfeit his right to redress for the wrongful negligence of another, because he might have escaped injury by a higher vigilance on his own part.

Whether the leaving a door partly open, through which sparks from the engine flew—such door being in a part of the house then in course of construction and under the hands of the builders—was culpable negligence on the part of the owner or his servants, is a question which may properly be referred to the jury as one of fact.

APPEAL from the Supreme Court. Action for negligently setting fire to the plaintiff's house. Upon the trial, these facts were proved: The plaintiff was the owner and in the occupation of a hotel at Dunkirk, fronting upon the defendant's track, about thirty feet distant therefrom. An addition to the hotel was in the course of erection, and in the hands of the carpenters and masons at the time of the accident. On that day a freight train arrived at its usual time, and as it had arrived for several months before. It stopped upon the track opposite to the plaintiff's house, towards which the wind was blowing, and sparks from the smoke-pipe or cinders from the ash-pan of the locomotive were driven by the wind through the open door of a room in the unfinished building, which was then temporarily used as a shop by the joiners employed in the building. The shavings upon the floor were ignited and the

building consumed. There was evidence that a mason employed in plastering some other part of the building, passed through this room shortly before the accident: saw that the door was open, and that sparks were blowing towards it, but went about his business without closing the door. The smoke-pipe, ash-pan, &c., of the defendant's locomotive were of the most approved construction then in use, with respect to precautions against the escape of fire and sparks. Exceptions were taken to the judge's charge and refusal to charge, which are sufficiently stated in the following opinion. The plaintiff had a verdict and judgment, which having been affirmed at general term in the eighth district, the defendant appealed to this court.

*Chauncey Tucker*, for the appellant.

*Dyer Tillinghast*, for the respondent.

BACON, J. The two questions which are presented by this case, arise upon the exceptions taken to the charge of the judge upon the trial and his refusals to charge as requested by the defendants' counsel: and these questions pertain, firstly, to the degree of negligence imputed to and chargeable upon the defendants; and, secondly, whether there was negligence on the part of the plaintiff, which concurred in producing the result. The jury have found upon both points submitted to them in favor of the plaintiff, and the inquiry now is whether there was any error of law in the manner in which these questions were left to the jury.

The substantial facts of the case, without entering into much detail, showed very clearly that the fire by which the premises of the original plaintiff were consumed, was communicated by sparks from the defendants' locomotive standing still upon the side track of the defendants at a point nearly opposite the house of the plaintiff, and distant only about thirty feet from it, and with a strong wind blowing directly from the engine toward the house. During the time the engine thus stood

upon the track, coals and sparks were emitted in large quantities, and were driven by the wind in the direction of the house, and no watch appears to have been kept over them, nor in fact any attention whatever on the part of any one in the defendants' employment paid to the matter. The nearness of the plaintiff's property to the engine, the constant emission of combustible matter, and the direction and force of the wind, were all circumstances calculated to admonish those having charge of the locomotive, of the imminent danger of remaining in that position without exercising a prudent circumspection of the surroundings.

On the subject of the care which under the circumstances, the defendants were called upon to exercise, the judge instructed the jury that less care is required of a railroad company while runing their trains in the country, where there is no property near their track exposed to fire, than in a village (as was the case in this instance) where buildings constructed of wood are situated so near to their road, as to be exposed to fire from the locomotive, and at a time when the wind is blowing in a direction from the engine toward the buildings. Under such circumstances they are bound to use the utmost care; and if for the want of such care, fire is communicated to such buildings, and they are consumed, the defendants are liable for the damages sustained thereby, unless the negligence of the owners of the buildings in guarding and protecting their property concurred in producing the result. To this charge the defendants' counsel excepted, and asked the court to charge that if the engine was in good order, and of proper construction, and used with ordinary care, the plaintiff could not recover. This instruction was refused by the judge, and the defendants' counsel excepted.

Taken as a whole, I think this charge, and refusal to charge as requested, were right. Some of the English cases have gone the length of holding that the very fact that buildings in proximity to a railroad have been fired by sparks from a locomotive, is sufficient to warrant a jury in inferring and presuming negligence without further proof. But I think we have

not carried the rule in this country to that extent, and certainly not in this State. The reason given is that the use of fire to create the motive power of a railroad engine is not only lawful, but necessary, and sparks may escape notwithstanding the safeguards which science and skill have employed to limit their range. (*Sheldon* v. *Hudson River Railroad Company*, 4 Kern., 218.) There must be therefore some proof of negligence to create a liability arising from the exercise of a conceded right in an improper or unreasonable manner. It is quite obvious too, that what under certain circumstances would not be even *prima facie* proof of want of care, would under a different state of facts be the highest evidence of negligence; and I think the discrimination made by the judge in this case is one founded in good sense and obvious justice : although not sustained by any direct authority, the principle on which it proceeds may be gathered from several cases decided in this court.

The case of *Rood* v. *New York and Erie Railroad Company* (18 Barb., 80), brings into view the rule upon which a railroad company may be exempted from liability for a casualty similar to the one in this case. There the woods of the plaintiff were claimed to have been fired by sparks from the defendants' locomotive. The train was running at the usual rate of speed in the open country, and it was shown that the engine was of the most approved construction : the spark arresters of the best pattern ; and that a suitable police had been provided upon the road for the purpose of following trains and looking after fires. These circumstances were held sufficient to discharge the defendants from liability for the damages which were supposed to have been occasioned by flying sparks from the engine.

But a much higher degree of care, both in respect to the rate of speed and the watchfulness to prevent casualties, should manifestly be required when trains are passing through, or remaining stationary in the streets of a city, or densely populated village ; and I think it is not stretching the rule unduly in such a case to say that, under such circumstances, the railroad company is bound to use the utmost care to guard against the

dangers which obviously attend such a condition. The substance of the charge, without criticising its terms with too great nicety, is that the care must be proportioned to the danger of accidents, and that where there is great danger, there must be a corresponding degree of care.

This is the rule declared in the case of *Kelsey* v. *Barney* (2 Kern., 425), and applied to the case of a collision of boats. The principle is there stated to apply to all persons traveling upon highways or navigating public waters, and in speaking of the qualifications and extent of the rule, Judge JOHNSON says, in his opinion, that under some circumstances a very high degree of vigilance is demanded even under the requirement of ordinary care. "Where," he says, "the consequences of negligence will probably be serious injury to others, and where the means of avoiding the infliction of the injury are completely within the party's power, ordinary care requires *the utmost degree of human vigilance and foresight.*"

The same principle is substantially held in the case of *Johnson* v. *Hudson River Railroad Company* (20 N. Y., 65). The cars of the defendant were driven in the night-time in one of the streets of the city of New York without any lights upon them, and the plaintiff's testator was run over while upon or crossing the track, and killed. In giving the case to the jury, the judge charged, among other things, that, considering the nature of the defendants' business and the hazard attending the running of cars in the streets of the city, and particularly on a dark night, "they were bound to exercise the utmost care and diligence; and for the purpose of avoiding accidents, endangering property and life, were bound to use all the means and measures of precaution that *the highest prudence could suggest,* and which it was in their power to employ." Language stronger than this can hardly be employed to indicate the extreme degree of care which is to be exacted of railroad companies under circumstances where prudence and watchfulness are required. This charge was excepted to, but on an appeal to this court it was sustained. In giving the opinion of the court, Judge DENIO remarks that, in his judgment, the charge

did not overstate the obligations which attach to persons running cars in the night over a course which is also a public street, in requiring them to exercise the utmost care and vigilance, and to use all the means of precaution which the highest prudence could suggest.

Applying the principles of these cases to the one at bar, I think the charge of the judge in respect to the care which the defendants in this action were. bound to exercise, was entirely unexceptionable. It was only expressing in somewhat different language and applied to a state of facts somewhat variant in their circumstantial details, but essentially identical with the cases above cited, the rule that the degree of care which is required of persons situated like the defendants in this case was to be proportioned to the danger to be apprehended of inflicting injury upon others, and that care the jury have found was not exercised in this case.

The remaining question in this case arises upon the exception of the defendants to the charge and refusal to charge on the subject of the alleged negligence of the plaintiff. The fact, as disclosed by the evidence, appeared to be that the fire was communicated by sparks or coals driven from the engine into the building of the plaintiff through a partly open door, and it was insisted by the defendants, and the judge was asked to charge that, if the fire was thus communicated, the leaving open the door was an act of carelessness which would preclude a recovery. This instruction the judge declined to give, but did charge that the plaintiff was bound to use such care in protecting his premises as a man of ordinary prudence would have employed under the circumstances, and if through his neglect, or that of his employees, his house was consumed, or if such neglect on his part concurred with negligence on the part of the defendants in producing the result, the plaintiff could not recover. Whether leaving open the door constituted such negligence, was left as a question of fact to be determined by the jury.

This portion of the charge is, in my judgment, wholly unexceptionable. It presented the legal principle which prevails in

such cases clearly to the jury, and in a manner entirely favorable to the defendant, and left, as it should, the question of fact to them, upon the evidence. It surely was not the duty of the court to rule, as matter of law, that there was actual negligence on the part of the plaintiff, to such a degree as to bar his recovery. It is difficult to maintain the proposition that one can be guilty of negligence while in the lawful use of his own property upon his own premises. The principle contended for by the defendants' counsel, if carried to its logical conclusion, would forbid the erection of any buildings whatever upon premises in such proximity to a railroad track as would expose them to the possibility of danger from that quarter. The rights of persons to the use and enjoyment of their property are held by no such tenure as this. On the contrary, where one in the lawful use of his own property exposes it to accidental injury from the acts of others, he does not thereby lose his remedy for an injury occasioned by the culpable negligence of such other parties. This is the principle upon which a recovery was had in the case of *Cook* v. *Champlain Transportation Company* (1 Denio, 91), and the remarks of Judge BEARDSLEY in that case are peculiarly apposite to this. The plaintiffs in that case were on their own land, and free to use it in any manner, and for any purpose which was lawful. "It would be a startling proposition, indeed," he says, "that a building placed in an exposed position on one's own land is beyond the protection of the laws, and yet it would come to that result upon the argument in this case. There must be *some wrongful act or culpable negligence* on the part of the plaintiff to bar him on this principle, and neither can be affirmed of any one for simply occupying a position of more or less exposure on his own premises."

The leaving open the door in this case, even if the act could be charged directly or mediately upon the plaintiff, surely cannot be characterized as a wrongful act or a culpable negligence. It is very possible that, by unusual precaution and watchfulness on the part of the plaintiff, the consequences of the defendants' wrong might have been less disastrous; yet if he was guilty of no culpable negligence, the mere fact that he

might have been more vigilant will not excuse the wrongful act of the defendants, nor deprive the plaintiff of all redress for the injury he has suffered. But, in truth, I am unable to see that the plaintiff was chargeable with any duty in respect to the closing of the door, even if it should be held that the omission to do this was an act of negligence. The plaintiff was not in the actual occupation of that part of the house which was fired from the engine. It was in the course of construction, and in an unfinished state, and the witness whose attention was directed to the door and the possible exposure from the sparks, and who partly closed it, was a mason engaged in other work upon another part of the building, and was only casually and for a temporary purpose in the room where the fire originated. He was not the servant of the plaintiff in any such sense as to make the latter responsible for his acts or omissions. Even conceding, for the sake of the argument, that they partook of the character of culpable omissions of duty, the case does not show whether this person was in the employment of the plaintiff and under a direct engagement with him, or was the subordinate of some other party who, as contractor, had charge of and was responsible for the entire work. At any rate, neither his employment nor his duty charged him with any responsibility in regard to closing the door, or any other act of precaution, if any such can be assumed to be devolved upon the plaintiff or his employees in respect to the protection of the property. If the witness might have been more prudent, or was even negligent, in not more effectually closing and leaving the door so as to prevent the entrance of sparks into the building itself, it by no means follows that this act would have obviated the effects of the defendants' carelessness, and still less that the plaintiff was chargeable with knowledge of the danger to which the building was exposed, and guilty of such negligence in not protecting it as to preclude any recovery for the total destruction of the property.

Upon the whole, I think the case was fairly submitted to the jury, under proper instructions in regard to the principles of law presented by the evidence, and that the verdict should

not be disturbed. If these views are concurred in, the judg·
ment must be affirmed.

All the judges concurring,

Judgment affirmed.