Longabaugh *v.* The Virginia City and Truckee R. R. Co.

SAMUEL LONGABAUGH, Respondent, *v.* THE VIR-
GINIA CITY AND TRUCKEE RAILROAD COM-
PANY, Appellant.

Fires Caused by Locomotives—Relevancy of Evidence of Previous Fires.
In a suit against a railroad company for damages occasioned by setting
fire to cord-wood by one of its locomotives : *Held*, that testimony of
previous fires in the same place caused by coals dropped from defend-
ant's locomotives, and also of the emission at the same place of sparks of
sufficient size to set fire to cord-wood, was admissible.

Question of Negligence—Relevancy of Evidence of Subsequent Negli-
gence. In an action against a railroad company for negligently setting fire
to cord-wood by coals dropped or sparks emitted from a locomotive, a
witness was allowed to testify that a few weeks after the fire complained of
another fire was caused on the same road by coals dropped from another
engine of the same company : *Held*, competent evidence.

Fire Along Line of Railroad—Presumptions—Burden of Proof. If one or
more of the locomotives of a railroad company drop coals or emit sparks
just prior to or soon after property on the line of its track has been de-
stroyed by fire, without any other known cause or circumstance of suspicion,
it becomes incumbent upon the company, in an action for damages caused
by such fire, to show that their engines were not the cause of it.

Irrelevancy of Testimony on Account of Remoteness. In an action
against a railroad for negligence in setting fire to cord-wood : *Held*, that
the fact of a fire having occurred in the wood-yard previous to the building
of the railroad was entirely irrelevant.

What Objections not Available on Appeal if not Taken Below. Ob-
jections, not seasonably and clearly presented in the court below, are una_
vailable on appeal, if they are such as might by legal possibility have been
obviated if so taken in the court below.

Negligence of Railroad in Causing Fire in Wood-Yard, What. In an
action against a railroad for setting fire by its locomotive to plaintiff's
wood-yard, the court charged the jury that if they believed that a locomo-
tive, if properly constructed and skillfully managed, would not set fire to
wood piled on the side of the track ; and if they further believed that the
plaintiff's wood was destroyed by fire or sparks from defendant's engine,
without plaintiff's fault, they should find for plaintiff : *Held*, no error.

Railroad Bound to use Best Known Appliances to Prevent Injury. A
railroad company is obliged to employ the best known appliances to pre-
vent injury to others from fire ; and the failure to do so is want of ordinary
care and prudence.

Longabaugh *v.* The Virginia City and Truckee R. R. Co.

"Immediate" and "Proximate" Cause the Same. In speaking of the contributory negligence of a plaintiff as a cause of damages, which will relieve a defendant from liability, the words "immediate cause" and "proximate cause" are indiscriminately used to express the same meaning.

Use of Dangerous Agents—Care in Proportion to Danger. As a person employing a dangerous agent is obliged to use care in proportion to the danger of such agent, a railroad is required to use a greater amount of care where property near its track is from its nature 'more likely to be destroyed.

Instruction Must be Applicable to Case. Where a jury had been fully charged and there was nothing in the instructions to indicate that a mere presumption, inference or guess would be sufficient to warrant the finding of a fact : *Held,* that it was no error to refuse an instruction to the effect that such a mere presumption, inference or guess would not be sufficient.

Limit to Right of Railroad to Emit Sparks. A railroad company has authority to run a locomotive propelled by steam and as a necessary consequence to emit sparks of fire ; but it has no right to carelessly emit sparks in such a manner as to set fire to property along the line of its road.

What Contributory Negligence of Plaintiff will Relieve Defendant. The rule of law, which releases a defendant from responsibility for damages caused by his negligence when there is contributory negligence on the part of the plaintiff, is limited to cases where the act or omission of plaintiff was the *proximate* cause of the injury.

Right to Use Destructive Agent to be "Carefully Limited." Where, in an action against a railroad company for damages occasioned by setting fire to a wood-yard, the court instructed the jury that the exercise, employment and use by the railroad of the dangerous and destructive element of fire, to which it had a right, should be carefully limited with just regard to the rights of others : *Held,* no error.

Railroad Spark-Catchers—How Far New Appliances Necessary. Though a railroad company must use the best appliances to prevent the scattering of fire, such appliances are not required to the extent of materially impairing the reasonable use of a locomotive engine.

Railroad to Keep its Track Clear and Prevent Escape of Fire. A railroad company must be diligent in keeping its track clear of such combustible matter as is liable to be easily ignited, and especially diligent to prevent the escape of fire when in the immediate neighborhood of combustible property.

Appeal from the District Court of the Second Judicial District, Ormsby County.

Longabaugh *v.* The Virginia City and Truckee R. R. Co.

This was an action to recover damages for the destruction of certain cord-wood in the wood-yard of the Mexican Mill at Empire City. The amount claimed was $5281, the value of wood burned belonging to plaintiff and his assignors. There was a verdict and judgment in favor of plaintiff for the amount claimed. Defendant moved for a new trial, which was denied; and he then appealed from the judgment and order.

*Mesick, Seely & Wood,* for Appellants.

I. The substance of the issue in this case was the careless and negligent conduct of the defendant's agents, servants and employees in the management and running of a locomotive, and in throwing fire therefrom ; but the verdict was founded, if upon anything but prejudice, on the claimed failure of defendant to keep its locomotive in good order; and even that fact is only attempted to be shown by proof that at other times, other locomotives must have been out of order. From the allegations of the complaint, the defendant could not have been apprised of the character of the case, which on the trial, was made out against it. The complaint alleges acts of negligence in certain officers, performing a specified duty, and the only support by proof of this allegation was that other persons, on other occasions, had been guilty of the offense charged.

Witnesses were allowed to state that they had seen coals on the track, and that fires had been set, but were not confined to any particular period of time. Their observations extended over a period of nearly four years, and none of them was able to give any dates when such things happened. Under these circumstances the presumption held reasonable in the New York cases cannot be indulged, as it must be apparent that the defendant could not be able to produce every engineer that had taken a locomotive into the

Mexican Mill wood-yard during four years, and by them disprove the testimony given by plaintiff's witnesses. Considering the uncertain character of the evidence, and its remoteness from the occurrence in question, it can be readily seen that, though it may have been utterly false and fabricated, yet the defendant was deprived of any possible chance to contradict it. It can scarcely be deemed within the range of probabilities, that the law will place a defendant in a position where he is cut off from all power to rebut testimony against him, which, if rendered certain, he would be able to disprove. Again, the reason of the rule in the New York cases wholly fails here. There the engines ran night and day, and with such speed, that no particular note could be taken of them; here it appears that but one engine was in the wood-yard on the day of the fire, and it remained there a quarter of an hour, and it is not shown that the name of that engine would have been difficult to get, or was even unknown to plaintiff. The charge was negligent and careless conduct on those in charge of defendant's locomotive; that being denied, the issue was whether such persons had been guilty of such negligent and careless conduct; but the evidence admitted, instead of corresponding with the allegation or being confined to the issue, merely went to show that at some six or seven times in four years one or more of the defendant's engines must have been imperfectly constructed or out of order. It is difficult to imagine a greater departure from the first rule of evidence than that exhibited by the record. Had counsel and court been desirous of upsetting every principle governing trials and of making a law unto themselves, they could scarcely have gone farther or succeeded better. See *Parker* v. *Rensselaer and S. R. R. Co.*, 16 Barbour, 315; *Mayor* v. *Humphries*, 1 Carr. & Payne, 25; *Breedlove* v. *Turner*, 9 Mart. Lou. Rep. 353; *Dunlap* v. *Monroe*, 7 Cranch, 242; *Malton* v. *Nesbitt*, 11 Eng. Com. Law, 318; *Gahagan* v. *Boston and Lowell R. R.*

*Co.*, 1 Allen, 187; *Robinson* v. *Fitchburg and Worcester R. R. Co.*, 7 Gray, 92; 7 Barbour, 18; *Green* v. *Palmer*, 15 Cal. 411; *Boyce* v. *Cal. Stage Co.*, 25 Cal. 469; *Egan* v. *Delaney*, 11 Cal. 85; *Wheeler* v. *Schad*, 7 Nevada, 211.

II.   How counsel or court became possessed of the idea that proof of coals being seen on the track, subsequent to the fire which destroyed plaintiff's wood, was proper as tending either to establish the burning or the negligence, is a matter of deep conjecture.   What possible figure such testimony could cut in the case, farther than to prejudice the minds and warp the judgments of the jury, is past finding out.   If a man is negligent to-day, must he of necessity have been so yesterday?   In any view, error in this particular seems palpable.   In the case of *Field* v. *Central R. R. Co.*, 32 N. Y. 339, it is true that evidence was given of fires on the track both before and after the fire; but the objection was confined to the evidence of those occurring previously; and nowhere in that case was the question here raised, considered or decided.

III.   The court below refused to allow us to show that fire had occurred in the wood-yard prior to the building of the railroad.   This testimony, we admit, could only be relevant in view of the rule of probabilities upon which the case was tried.   If the evidence adduced by plaintiff tended to fix defendant's liability, defendant had a right to prove that a fire happened in the same place before its time, and thereby meet probabilities with probabilities.   Plaintiff having been allowed to show everything occurring from the building of the road to the day of the trial, the defendant ought to have been permitted to show everything occurring prior to the time when plaintiff's evidence began.

IV.   The first instruction was erroneous.   It left the jury to make but one inquiry, and that was as to the cause of the fire; and if they believed that the defendant's engine caused

the fire, they are charged not to heed any defense nor any excuse defendant may urge. They are told that if they believe that a properly constructed engine, skillfully run and managed, will not set fire to inflammable material, but that one of defendant's engines did set fire to plaintiff's wood, they will find for plaintiff. They are not called upon to inquire whether or not defendant exercised any diligence or care in the construction of its engines, or in the running or management of them, or was guilty of any negligence in these particulars; they are not called upon to determine whether or not there was any inflammable material on the track, or if there was, whether or not defendant put it there, or even knew of its being there. No case yet decided has carried the doctrine of liability for fires to the extent fixed in the above instruction.

V. It was error to tell the jury that defendant was obliged to employ the best known appliances to prevent injury to others from fire. The utmost obligation upon defendant, was to use the best appliances usually employed upon railroads in this country. *F. & B. Turnpike Co.* v. *P. & T. R. R. Co.*, 54 Penn. State, 352.

VI. There was error in charging that the negligence of the plaintiff, in order to release defendant, must have been the *immediate cause* of the destruction of his wood. The utmost extent of the rule seems to be, that the plaintiff's negligence, to be considered contributory, need only be the proximate cause of the damage. Shearman & Redfield on Neg., Secs. 33, 10.

VII. There was error in the instruction in reference to the permitting of bark or chips to accumulate on the track. Nothing of the kind was asserted or attempted to be shown. *Kesie* v. *Chicago & N. W. R. R. Co.*, 30 Iowa, 78; *The Ohio & Mis. R. Co.* v. *Shanefelt*, 47 Ill. 497; *Chicago & N. W. R. R. Co.* v. *Simonson*, 54 Ill. 504.

VIII.   It has been held that a railroad company is obliged to use additional care in towns and cities, and in passing through grain fields in a dry season, but it has never been held before that any greater precautions are demanded for the protection of cord-wood, than such as are ordinarily required toward any other property.

IX.   In the absence of all proof as to the management or condition of the defendant's locomotive on the day of the fire, the only evidence upon which plaintiff could rely, was nothing more than a presumption, supported by proof that one engine had passed the place of the fire on the day it occurred.   Such evidence, standing alone, was not sufficient to justify a verdict for plaintiff.   The instruction that the jury was not to jump at a conclusion without proof, was therefore applicable and proper.  *Smith* v. *Hannibal & St. Jo. R. R. Co.*, 37 Missouri, 295; Shearman & Redfield on Negligence, Sec. 333; 29 Barbour, 229.

X.   There was error in refusing to give the instruction that an authority to run a locomotive propelled by steam is an authority to emit sparks therefrom.  *Rood* v. *New York and Erie Railway*, 18 Barbour, 86; *Moshier* v. *The Utica and Schenectady Railroad Company*, 8 Barbour, 427; *F. and B. Turnpike Co.* v. *P. and T. R. R. Co.*, 54 Penn. State, 349; *Sheldon* v. *Hudson River R. R. Co.*, 14 New York, 224 ; Shearman & Redfield on Neg., Sec. 332; *Fero* v. *Buffalo and State Line R. R. Co.*, 22 New York, 212.

XI.   There was error in refusing the instruction asking the court to define not only the character of the appliances which defendant must use, but also the manner of their use. See *Smith* v. *Hannibal and St. Jo. R. R. Co.*, 37 Mo. 294; *Rood* v. *New York and Erie Railway*, 18 Barb. 87.   Also, in refusing the instruction defining contributory negligence. See *Ohio and Mississippi R. R. Co.* v. *Shanefelt*, 47 Illinois, 501; 37 Mo. 294; 24 New York, 430; 20 Michigan, 253; 30

Iowa, 78; 54 Illinois, 504. Also, in charging that the rights of defendant should be "carefully limited." This language was almost an invitation to the jury to find a verdict against the defendant. It said to them that, though the defendant had some rights, still their enjoyment was not as that of the rights of other persons, but was hedged about with any restrictions which it might please a jury to consider proper. The court had just told the jury, that although the defendant had a lawful right to use fire and steam, yet this right was an exceptional one among ordinary human pursuits. This was bad enough; but the last was the crowning glory. The defendant was no longer allowed to occupy the position given it by the law; but was reduced to the bare possession of an exceptional right, and that only to be held with a careful limitation. Had it pleased the court to say that defendant had no rights whatever, its error could have hardly been more egregious or more disastrous.

XII. There was error in charging substantially that a railroad company is only excused from employing such appliances as would prevent the working of the locomotive; also in charging that a railroad company must be diligent in keeping its track and right of way clear of such combustible matter as is liable to be easily ignited; also in charging that a railroad company must be especially diligent to prevent the escape of fire and sparks from its engines, when in the immediate neighborhood of combustible property. A railroad company is only required to use ordinary care and diligence. What is ordinary care may be determined by the circumstances, and in some cases greater care is required than in others, but nothing was shown in this case to warrant the use of the words "especially diligent."

XIII. The jury was substantially authorized to find negligence from the mere fact of the fire, when they were told that proof that defendant caused the fire might alone

be sufficient to warrant them in coming to the conclusion that it occurred through defendant's negligence. But as a matter of law, no presumption of negligence arises from the fact of fire being communicated by a railroad engine. 1 Redfield on Railways, 452; *Field* v. *New York Central R. R. Co.*, 32 New York, 350; *Rood* v. *New York & Erie Railway*, 18 Barbour, 86; *Railroad Company* v. *Yeiser*, 8 Penn. State 377; *F. & B. Turnpike Co.* v. *P. & T. R. R. Co.*, 54 Penn. State 350; *Smith* v. *Hannibal & St. Jo. R. R. Co.*, 37 Mo. 295; 15 Conn. 124; 22 New York, 211; *Walsh* v. *Virginia & Truckee R. R.*, 8 Nevada, 115; 30 Iowa, 421; *Vaughn* v. *Taff Vale Railway Co.*; 5 Hurlstone & Norman, 678.

XIV. No effort was made to show that the offending locomotive had been handled in any manner in the least removed from the most cautious, skillful, and diligent; but on the contrary, it was shown that this locomotive was run and managed carefully and skillfully, and not overtasked; nor was any evidence given that any fire or sparks were thrown or dropped from either the smoke-stack or ash-pan of the locomotive on that occasion. Nor was there anything going to show that on that occasion that locomotive was not in perfect order and fully supplied with all necessary machinery and apparatus. There was no proof of negligence. The plaintiff piled his wood near the track in order to employ the railroad for its transportation; and if defendant did actually cause its destruction, it was the result of an accident, to prevent which defendant used every reasonable precaution, and against which plaintiff accepted the chances.

*Lewis & Deal*, for Respondent.

I. The allegation that defendant "so carelessly and negligently ran and managed its engines, that the said wood was fired," etc., is sufficient to admit proof of the running of defective engines. It cannot be said that the careless

running of a locomotive simply means that there was care-
lessness in the means used for propelling the machine, or
the management of it by the engineer.   "Carelessly run-
ning" would as well include the use or employment of a
locomotive not in good order.   But there was no specific ob-
jection in the court below to proof on the part of the
plaintiff that the defendant's engines were not in good
order.   The case was tried all through as if such proof
were legitimate.

II.   Proof of former fire was legitimate, even if there had
been sufficient and specific objections taken to it.   An ex-
amination of the cases will show that proof of former fires
is not confined alone to the establishment of the fact that
defective engines were employed.   All the authorities, except
the case from Maryland, hold that proof of former fires is
proper for two purposes, namely, to establish at least a pro-
bability that the fire took from the engines, and second, to
establish negligence.   *Field* v. *The Central R. R.*, 32 N. Y.
339; *Sheldon* v. *The Hudson River R. R. Co.*, 4 Kernan, 218;
Shearman & R. on Negligence, Sec. 333 ; *Fitch* v. *The Rail-
road*, 45 Mo. 322 ; 7 Kansas, 380; 1 Redfield on R. R. 453,
and note; 2 Strob. 358; *Aldrich* v. *The Great Western R. R.
Co.*, 42 Eng. Com. Law, 275; *Webb* v. *The Rome, Watertown
and Ogdensburg R. R. Co.*, 49 N. Y. 420.

Such proof, in connection with the proof of the other two
facts, namely: that an engine passed the spot where the fire
started just before, and that there was no other probable
way by which the fire could have taken, make out a clear
and satisfactory case that the particular fire in question
must have taken from the engine.

III.   It cannot be said that the inference that the fire of
the 26th of May was set by the engines of the defendant was
weakened by the fact that we proved the continuous habit
of setting fires from a remote period up to about that date;

or rather, that such inference would be stronger, if we had only proven the setting of fires at times near the 26th of May. One would suppose that the longer a particular course of conduct is shown to have existed the stronger the inference that the same conduct or practice was pursued at any particular time.

IV. Proof of fires subsequent to the fire of May 26th was still proof tending to show that the fire of the 26th might have been set by the engines of the defendant—tending to show that an engine could set such fire. It makes no difference so far as the proof of such fact is concerned, whether the fires proven occurred before or after the fire of the 26th of May. It does not follow that because a "man is negligent to-day that he will be so to-morrow," but it was a very rational inference that the fire of the 26th of May was set by the engines of the defendant, after we showed that its engines were in the habit of setting fires, under similar circumstances; and we proved that there was no other probable means by which it could have taken.

V. Proof that a fire had occurred in the wood-yard, years before the railroad was built, had no tendency to disprove either the fact that the fire of the 26th of May was not set by an engine, nor to negative the defendant's negligence. It was simply an offer to prove that a fire could take in a wood-yard, without the possibility of its being set by an engine. The proof had no bearing whatever in this case. It could not possibly tend to prove or disprove any material issue in the case; hence it was properly ruled out.

VI. The only objection that can be relied on to the first instruction is that it did not correctly state the law. That it did not state the character of inflammable matter intended, is rather too fine a discrimination to receive much consideration from practical minds. The instruction substantially was that if they found that an engine properly constructed

and skillfully handled would not set such fire, and that the fire in question was set by the engines of defendant, then they should find for plaintiff, unless plaintiff was in fault. The question of negligence was fairly submitted; for if an engine properly constructed and managed would not set the fire, then the conclusion was irresistible that the company was negligent either in employing an incompetent person to manage its engines, or in running engines not properly constructed.    The only proof in the case was that there was bark and chips on the track, that the fire took in such bark and chips, and it is only reasonable to think that the jury understood the court to charge them with reference to such combustible matter, and not as to something not mentioned in the case, such as gunpowder.

VII.    The law requires a railroad company to employ the best known appliances to prevent the escape of fire or injury to others.    " Ordinary care and prudence require the use of the best contrivances known, and unless such are used, it will be considered negligence."    *Jackson* v. *The Chicago and Northwestern Railroad,* 31 Iowa, 176; *Fitch* v. *The Pacific R. R. Co.,* 45 Mo. 327; Shearman & R. on Negligence, Sec. 333.

VIII.    The argument on the use of the word "immediate" instead of "proximate" is rather too transcendental to be grasped by our ordinary understanding.    "Proximate" and "immediate" are generally defined by lexicographers to be synonymous, and so the courts, in defining contributory negligence, use the words indifferently, as meaning the same thing.    40 Cal. 14; 27 Conn. 406; 37 Cal. 406.

IX.    The fifth instruction given, which had reference to chips and bark on the track, was more favorable to defendant than to plaintiff; but even if it had not been, it could at any rate not have injured defendant.    As to the sixth instruction, it is in almost the exact language of the books that the care to be exercised by a railroad company must be propor-

tionate to the danger; that when the liability to set fire is great, the precaution should be greater than where there is no such liability. *Fero* v. *The Buffalo and State Line Railroad*, 22 N. Y. 209; *Gorman* v. *The Pacific R. R.*, 26 Mo. 441; 58 Ills. 389.

X.   The instruction of defendant, which was refused, as to a mere presumption, inference or guess, was not proper, as it assumed that the evidence offered only amounted to a mere presumption, inference or guess; whereas the evidence was positive, though circumstantial in character, and tended to show that the fire was caused by appellant.

XI.   That a railroad has a right to emit sparks, there is no question; but we claim that under the proof in this case, it had no right to emit such sparks as would do injury, and that was the only question in the case.

XII.   Defendant's instruction as to contributory negligence was properly refused; because not correctly stating the law and also because there was no question of contributory negligence in the case; and further, because if there was, it had been correctly submitted in plaintiff's instructions.

XIII.   The appliances generally used, even on defendant's road, do impair the use and diminish the power of their engines; such appliances always produce that result; and it is fair to say that if the power of an engine be perceptibly lessened it is *materially* impaired; for any lessening of the power is a material impairment of the usefulness of an engine.   But the court here told the jury that such appliances are not required to the extent of impairing the reasonable use of an engine.   Now, if there was any objection to this language, the plaintiff was the only person who could complain; for he alone could have been injured by it.

XIV.   The charge that it was the duty of the railroad to be diligent in keeping its track clear of combustible matter

liable to be easily ignited and to prevent the escape of fire at all times, much more so when in the neighborhood of combustible matter, was proper.   31 Iowa, 176.

XV.   Courts, in determining whether a charge was correct or not should look to the entire charge and not to detached sentences.   It is perfectly clear from the charge here, when taken as an entirety, that the jury could not possibly have come to the conclusion that they had a right to find against the defendant upon mere proof of the setting of the fire, unless that same proof also proved the negligence. The jury was over and over again told that the plaintiff was compelled to prove, not only that the defendant set the fire, but further, that it was set by means of the defendant's negligence.   The language is really nothing but a quotation from the opinion of Judge Wright, in *Field* v. *The Central Railroad*, 32 N. Y. 346.


By the Court, HAWLEY, J.:


This action is brought by plaintiff to recover damages for the burning of certain cord-wood, on the 26th day of May, 1873.   The complaint alleges:   " That the defendant by its agents, servants and employees, not regarding its duty in that respect, so carelessly and negligently ran and managed its locomotives, that the said wood was fired and completely destroyed by fire carelessly and negligently dropped and thrown from said locomotives, by the said servants and employees of the said defendant."   On the trial the court permitted witnesses to testify that previous to May 26, they had frequently seen fires in the same wood-yard, caused by coals dropped from defendant's engines, and also, at various times seen sparks from said engines at the same place of sufficient size to set fire to cord-wood.   The defendant objected to the admissibility of this testimony on the ground

that it "was irrelevant, incompetent, and as not tending to establish any issue in this case." This objection was general. If, therefore, the testimony tended to establish any of the issues raised by the pleadings, the objection was properly overruled. ·

1. Was this testimony competent, under the facts of this case, to prove any of the issues raised by the pleadings? This, in my judgment, is the most important question presented by this appeal. There is a conflict in the authorities bearing upon this point. In *Ballimore and S. R. R. Co.* v. *Woodruff*, the lower court admitted testimony showing that before the occurrence of the fire upon plaintiff's farm, fire had been communicated by defendant's engines to the property of other persons on defendant's road. The court of appeals held this to be error. After quoting from Greenleaf that collateral facts are calculated to introduce a wide scope of controversy, drawing off the mind of the jury from the point really in issue, 1 Green. on Ev., Sec. 52, the court say: "It is by no means a necessary consequence, that because the engine did set fire to the property of another, it also was the cause of burning that of the plaintiff. * * The evidence offered is no less objectionable in reference to the question of negligence, than to that of the firing itself. There is no time specified. We do not know whether it was one month or five years before the injury in dispute. And the instances alluded to might have occurred without the least negligence, which the defendant would have been able to show by satisfactory proof, if notified of an intention to introduce them. Or if they had been the result of great carelessness, nevertheless, the injury complained of in this suit might have occurred when the agents of the company were using all proper precaution." 4 Maryland, 254. It is claimed that this case is an authority directly in point. It is relied on by defendant's counsel, who urge substantially the same reasons against the admissibility of the testimony in this case.

The court of appeals, in New York, has uniformly held such testimony to be admissible. In *Sheldon* v. *Hudson R. R. Co.*, Denio, J., after stating the facts, said: " I think, therefore, it is competent prima facie evidence, for a person seeking to establish the responsibility of the company for a burning upon the track of the road, after refuting every other probable cause of the fire, to show that, about the time when it happened, the trains which the company was running past the location of the fire were so managed in respect to the furnaces as to be likely to set on fire objects not more remote than the property burned. * * * The evidence * * not only rendered it probable that the fire was communicated from the furnace of one of the defendant's engines, but it raised an inference, of some weight, that there was something unsuitable and improper in the construction or management of the engine which caused the fire." 14 N. Y. 221. Hubbard, J., was of the opinion that the evidence "was competent, and should have been received upon the proposition whether the defendants caused the fire." After citing several English cases, claimed to be in point, he said : "The principle is essential in the administration of justice, inasmuch as circumstantial proof must, in the nature of things, be resorted to. * * The evidence was competent to establish certain facts which were necessary to be established in order to show a possible cause of the accident, and to prevent vague and unsatisfactory surmises on the part of the jury." 14 N. Y. 224.

In *Hinds* v. *Barton*, 29 N. Y. 544, although the testimony was not subject to some of the objections urged in *Sheldon* v. *Hudson R. R. Co.*, the court cited with approval the language of Denio and Hubbard, J. J., above quoted.

In *Field* v. *New York C. R. R.*, 32 N. Y. 339, the principles announced in *Sheldon* v. *The Hudson R. R. Co.* were again affirmed. Here the fire occurred in October, and the plaintiff was allowed to give evidence of another fire occurring on

his premises in May previous, and the court held that in the light of the decision in Sheldon's case and the peculiar circumstances of the case under consideration, the evidence was not too remote or indefinite to have any just influence upon the question of the cause of the fire and of negligence. It was not proved by what engine the fire was dropped, nor that any engine had dropped coals on the particular occasion; but the fire was traced back from the burning wood to the defendant's track, on which coals were found, and in the immediate vicinity of which the dry grass was burned off. Upon this state of facts, Davis, J., said: "As bearing upon the question how this fire came upon the track, it was competent to show that the locomotives of the defendant had been accustomed to scatter coals of fire frequently along the track." The same justice held that "it was also competent on the question of defendant's negligence."

In *Webb* v. *R. W. and O. R. R. Co.*, upon the trial, the court allowed evidence on behalf of plaintiff, under objection, that defendant's engine for a month or two before the fire had dropped quantities of live coals in the locality of the fire; that there were live coals upon the track at other places at the time of the fire; and that coal at other times had dropped from the engine in question, and the court of appeals held that such evidence was "pertinent and proper." 49 N. Y. 424.

It is undoubtedly true that the value of any given case as an authority depends very much upon the similarity of the facts with the case under consideration. Facts are the controlling elements in every case. I fail, however, to observe the force of the argument of defendant's counsel in their efforts to point out an essential difference between the facts of this case and the cases in New York. True, the engines of defendant in 14 and 32 N. Y. ran night and day, and with such speed, that no particular note could be taken of them as they passed. It was there impossible to designate the

offending engine.    Here there was but one locomotive, the
" I. E. James," in the wood-yard on the day of the fire.    In
14 N. Y. the testimony was confined to a time at or about
the time of the fire.    Here witnesses were allowed greater
latitude.    But are these distinctions important?    Do they
change the reasoning of the opinions we have quoted; or
require a different rule in this, from other cases?    What are
the facts of this case ?    Plaintiff's wood caught fire in some
manner to him, at the time, unknown.    How did the fire
originate?    This was the first question to be established in
the line of proof.    Positive testimony could not be found.
The plaintiff was compelled, from the necessities of the case,
to rely upon circumstantial evidence.    What does he do?
He first shows, as in the New York cases, the improbabili-
ties of the fire having originated in any other way except
from coals dropping from defendant's engines.    He then
shows the presence, in the wood-yard, of one of the engines
of the defendant within half an hour prior to the breaking
out of the fire.    Then proves that fires have been set in the
same wood-yard within a *few weeks* prior to this time, from
sparks emitted from defendant's locomotives.    I think such
testimony was clearly admissible, under the particular facts
of this case, upon the weight of reason as well as of author-
ities.

The conclusions reached by the court of appeals in *Balti-
more & S. R. R. Co.* are not consistent with the testimony in
this case, and hence the value of its reasoning is materially
shaken if not entirely destroyed.    On the question as to the
cause of the fire, the court in Maryland held that the very
nature of an engine was sufficient to satisfy a jury that it
would probably set fire to property along the road, and, that
for this reason the testimony ought to have been confined to
its manner of construction.    Upon the question of negli-
gence, the court said it could not be denied " that such an
engine may communicate fire when running in the best con-

dition." Mechanical ingenuity is constantly employed in inventing new and improved machinery of every kind and character. It is fair to presume that decided improvements have been made in the appliances used on railroads to prevent the emission of sparks or dropping of coals from the engines since 1853, when the Maryland case was decided.

But we are not required to enter into any speculations upon this point. Holloday, a witness for plaintiff, who for thirty years had been engaged as a machinist and locomotive engineer, testified that an engine might be so constructed as not to throw out any fire. "It is done by putting screens in the smoke-stack and ash-pan. If an engine is supplied with the best known appliances in common use, and is skillfully managed, no sparks can escape from the smoke-stack or coals from the ash-pan that will set anything on fire." Substantially to the same effect is the testimony of defendant's witnesses. Bowker, master mechanic on defendant's road, and the inventor of the appliances used on the smoke-stacks of defendant's engines, a machinist and engineer of over thirty years practice, testified as follows: " If an engine is supplied with these appliances (his invention) and properly managed, it cannot throw sparks from the smoke-stack, or drop coals from the ash-pan that would kindle a fire."

It is not, says Greenleaf, necessary that the evidence "should bear *directly* upon the issue. It is admissible if it *tends* to prove the issue, or constitutes a link in the chain of proof; although, alone, it might not justify a verdict in accordance with it." 1 Green. on Ev., Sec. 51 a. The evidence was admissible, as tending to show a probable cause of the fire, and to prevent vague and unsatisfactory surmises on the part of the jury. Upon the question of negligence, it was admissible as tending to prove that if the engines were, as claimed by defendants, properly constructed and supplied with the best appliances in general use, they

could not have been properly managed, else the fires would not have occurred. There is not in my judgment any substantial reason for the objection urged to this testimony on the ground that it referred to other engines than the one shown to be present on the day of the fire. The business of running the trains on a railroad supposes a unity of management and a general similarity in the fashion of the engines and the character of their operation. Nor is the objection that plaintiff was allowed too great a latitude in proving that fires had occurred at various times extending over a period of four years, well taken. The more remote in point of time the less relevancy it would have; and the more favorable it would be for defendant. But where, as in the present case, the proof shows such fires to have occurred within a *few weeks* prior-to the time when plaintiff's wood was destroyed, and follows it up by showing that other fires have occurred at various times, at the same place, since the railroad was built, the more pertinent is the testimony. "The more frequent these occurrences, and the longer time they had been apparent," said Davis J., in *Field* v. *N. Y. and C. R. R.*, "the greater the negligence of the defendant; and such proof would disarm the defendant of the excuse that on the particular occasion the dropping of fire was an unavoidable accident."

2. Mrs. Weston, a witness for plaintiff, was permitted to testify, against the same objection of defendant, that she had seen a fire on the track about four weeks after the fire that had destroyed plaintiff's wood. This fire occurred from coals dropped from the locomotive "Reno." Under the reasoning of the authorities cited as applied to the facts of this case I think the testimony was admissible. Certainly such testimony would have been admissible if directed against the "I. E. James," the offending engine. But there is no pretense that the "I. E. James" is differently constructed from the "Reno" or any other locomotive on de-

fendant's road; or, that any different appliances are used to
prevent the emission of sparks from the smoke-stack or the
dropping of coals from the ash-pan.   It was within the
power of defendant, which must necessarily have intimate
relations with all its engineers, conductors and employees,
to prove these facts, if they existed.   The *onus probandi* is
upon the defendant.   If one or more of its engines drops
coals from its ash-pan or emits sparks and cinders from its
smoke-stack just prior to or soon after property on the line
of its track has been destroyed by fire without any known
cause or circumstance of suspicion besides the engines, it
becomes incumbent upon the railroad company to show that
their engines were not the cause.   The defendant in order
to contravert such evidence should be able to show that
the special facts at the time of the destruction of the prop-
erty were such as to overcome the general inference from
the plaintiff's evidence, and avoid the presumption which
that evidence created.   *Sheldon* v. *Hudson R. R. Co. supra*;
*Field* v. *N. Y. & C. R. R. supra*.   This the defendant at-
tempted by showing that the "I. E. James" was a yard
engine, used to run in and out of wood-yards, and for that
reason "extra precautions were always used to have and
keep the appliances for the arresting of sparks in good
order and condition," &c., &c.   This testimony was entitled
to great weight and was doubtless properly considered by
the jury.

3. It was not error for the court to refuse to allow de-
fendant to show that fire had occurred in the Mexican Mill
wood-yard, prior to the building of the railroad.   This evi-
dence was entirely too remote in its effect.   It did not tend,
either to rebut any evidence offered by plaintiff, nor to
establish any fact in favor of defendant.   This testimony
was clearly inadmissible.

4. The first instruction, asked by plaintiff and given by
the court, is as follows: "If you believe from the evidence

that a locomotive engine, properly constructed and skillfully run and managed, will not set fire to cord-wood piled by the side of the railroad track, or to inflammable material that can, when set on fire, communicate fire to cord-wood; and if you further believe, from the evidence, that plaintiff's wood was destroyed by fire or sparks from defendant's engine or engines, without fault or negligence on the part of plaintiff, * * you will find a verdict for plaintiff." Three specific objections are urged by defendant's counsel to this instruction: First, That the construction of defendant's engines had nothing to do with the issues raised by the pleadings. No such specific objection was made at the trial to the admissibility of testimony bearing directly upon this point. The testimony of Holloday and Bidwell tended to show that the engines of defendant were not properly constructed, so as to prevent the emission of sparks or the dropping of coals. The defendant introduced testimony to prove that its locomotives were properly constructed. It met this issue and assisted in presenting it before the jury and tried the case, throughout, in the same manner as if such an allegation had been in the complaint. If the objection had been made at the proper time the plaintiff could, by leave of the court, have amended his complaint, or else have withdrawn this particular issue from the consideration of the jury. I understand the general rule of law to be that objections which by legal possibility might have been cured, or obviated, if they had been taken in the course of the proceedings under review, are unavailable in an appellate court unless they were reasonably and clearly presented in the court below. The second objection is not tenable. The words "inflammable material" must be held, upon the familiar rules of law, to apply to such material as was shown to be on or near the track. The third objection is also untenable. If the instruction legally bears the interpretation given it by defendant's counsel, "that the

jury are told to find for the plaintiffs if they believe that the wood was fired by the defendant's engine," it would deprive defendant of one of its grounds of defense. But is the instruction susceptible of such construction? Certainly not. The jury must find, first, that an engine properly constructed and managed would not set such fire; second, that the fire was actually caused by the dropping of coals from defendant's engine. If these facts are found in the affirmative, would it not inevitably follow that the defendant was guilty of negligence? In the light of the testimony, the instruction was correct and pertinent to the facts of the case.

5. Defendant contends that it was error for the court to instruct the jury that defendant was obliged to employ "the best known appliances to prevent injury to others from fire." The rule is now well settled that railroad companies are liable, in cases of this character, for the want of ordinary care and prudence. The degree of care must always be measured by the facts and circumstances of each particular case. In cases like the present, ordinary care and prudence require the use of the best appliances known, and unless such are used it will be considered negligence. *Vaughan* v. *The Taff Vale R. Co.*, 5 H. and N. 679; *Fremantle* v. *The London and N. R. Co.*, 100 English C. L. 92; *Jackson* v. *The Chicago and N. W. R. R. Co.*, 31 Iowa, 177; *Fitch* v. *The Pacific R. R. Co.*, 45 Mo. 327; *Chicago and A. R. R. Co.* v. *Quaintance*, 58 Ills. 391. The court in Iowa, after stating the general rule, said: "One who fails to use the best means within his reach to prevent the destruction of property does not exercise the care of a man of common prudence." In Missouri the court say that "when as dangerous, as well as useful, an instrument of locomotion as a steam locomotive is used, its managers are bound to a care and precaution commensurate with the danger. They have a right to use the instrument, but have no right to scatter fire along their track; and when it is found that this is done, with no explanation of

the cause, the jury is warranted in inferring that there has been some neglect. To rebut that reasonable inference, the defendant should show that the best machinery and contrivance were used to prevent such a result."

6. Defendant claims that in the third instruction asked by plaintiff, the court erred in charging the jury that the negligence of the plaintiff, in order to release the defendant, must have been the *immediate* cause of the destruction of his wood, and herein argues, that the utmost extent of the rule is that, to be considered contributory, it need only be the *proximate* cause of the damage. Proximate cause is oftener used, and is probably better, yet it means that which immediately precedes and produces the effect as distinguished from remote. In examining the authorities it will be found that "immediate" and "proximate" are indiscriminately used to express the same meaning. *Isbell* v. *New York & N. H. R. R. Co.*, 27 Conn. 406; 37 Cal. 406; 45 Mo. 327.

7. In the fifth instruction the jury were told that if defendant "permitted bark and chips to accumulate on its track, and that through its negligence it set fire to such bark and chips, and that fire was carried or drawn from such fire by the wind to plaintiff's wood-pile, and plaintiff's wood thereby destroyed," the verdict should be for plaintiff. I cannot see how it was possible for the defendant to be prejudiced by the use of the language objected to. The jury could only have been misled by inferring from it that it must be found as a fact that the defendant permitted barks and chips thus to accumulate. This would be exacting more than the law requires, but would make the instruction more prejudicial to plaintiff than defendant.

8. The sixth instruction, objected to by defendant, that: "A person employing or using a dangerous agent is obliged to use care in proportion to the danger of such

agent; he is also required to use a greater amount of care where property near its road from its nature is more likely to be destroyed," states a principle of law, applicable to this case, correctly. *Fero* v. *The Buffalo and S. L. R. Co.*, 22 N. Y. 211; *Gorman* v. *Pacific R. Co.*, 26 Mo. 447; *F. & B. Turnpike Co.* v. *P. & T. R. Co.*, 54 Penn. State 350; *C. & A. R. R. Co* v. *Quaintance, supra.*

9. It is claimed that the court erred in refusing this portion of the first instruction asked by defendant: "A mere presumption, inference, or guess, will not be sufficient to warrant you in finding the fact that the fire occurred from sparks dropped or thrown from the locomotive; nor will the fact that a locomotive at some time during the day and previous to the fire passed the place where the wood was piled, be alone sufficient to warrant you in coming to the conclusion that fire or sparks from the locomotive occasioned the damage." The testimony offered by the plaintiff was purely circumstantial. The various links connecting the chain of proof were to be closely scrutinized. The jury were to determine therefrom, whether or not such circumstances were convincing in their character; satisfactory in their proof; consistent with other facts, and reasonable with the conclusions reached. The evidence upon all points must be sufficient to satisfy the mind of the jury. A mere presumption that the fire originated from the engine of defendant, or that plaintiff's wood might have been so set on fire, would not of itself justify a verdict against the defendant. The fact that the wood was set on fire by sparks, or coals emitted or dropped from defendant's engines must, like other facts, be established by such competent evidence as would satisfy a reasonable mind of its existence. There should be no guess-work; no jumping at conclusions. *Fitch* v. *The Pacific R. R. Co., supra.* The facts must be established, without the aid of sheer conjecture, or some presumption of

law or fact, beyond what the facts proved rationally im-
ported. *Smith* v. *Hannibal & St. Jo. R. R. Co.*, 37 Mo. 295.
Plaintiff could not recover upon a possibility. The rights
of property and all claims to its possession and enjoyment
are dependent upon the existence of certain facts. When
they are disputed and become the subjects of judicial inves-
tigation, if juries could assume their existence without suffi-
cient evidence, and render verdicts upon possibility, proba-
bility and conjecture, the courts would be shorn of their
legitimate authority and the wise and just rules of the com-
mon law, as they have been recognized and applied from
time immemorial, would lose their principal value. This
leads us to the examination of other questions. Did the
court give the law correctly in other instructions? Could the
jury in the light of all the instructions given, and in view of
all the testimony submitted, have been misled upon this
point? The case did not rest alone upon the fact that an
engine had been in the wood-yard just previous to the fire.
But the improbability of the fire having been set from any
other cause was first established. But one house was situate
near the wood-yard. The wind was blowing in such a direc-
tion as to carry sparks from this house away from instead of
towards the wood pile. The fire occurred in the day time.
It was discovered within half an hour after one of the en-
gines had been in the wood-yard. It caught in the bark or
chips that were on or near the track over which one of the
engines of defendant had recently passed. The engines of
defendant within a few weeks prior to and after the time of
the fire had set fire in the same wood-yard. Coals of fire of
sufficient size to set fire to cordwood had frequently been
seen by several witnesses to drop from defendant's engines
at or near the place where this particular fire occurred. The
court, at defendant's request, instructed the jury that before
a verdict could be found for plaintiff " two necessary facts
must be established from the evidence to the satisfaction of

the jury: First, that the fire * * was in fact occasioned by fire dropped or thrown from a locomotive engine of the defendant; second, that such dropping or throwing of fire occurred through the careless and negligent conduct of defendant and its servants in the construction, repairs, management or running of the locomotive from which such fire was dropped or thrown." In its charge the court told the jury, that "negligence must be affirmatively shown by testimony in the same manner as any other fact is shown." It seems impossible that under this state of facts the jury could have inferred that "a mere presumption, inference or guess" was sufficient to warrant a finding that the fire was caused by sparks or coals from the engine; or that the mere fact of the presence of an engine in the wood-yard, near the time when the fire occurred, was sufficient to warrant any such conclusion. The withholding of this part of the instruction from the consideration of the jury was not, in my judgment, prejudicial to defendant.

10. It is argued by defendant's counsel that the court erred in not instructing the jury "that an authority to run a locomotive, propelled by steam, is an authority to emit sparks therefrom." The general proposition that defendant had the right to emit sparks is not denied. That follows necessarily from the authority to run the locomotive. *Rood* v. *New York & E. R. Co.*, 18 Barb. 87; *F. & B. Turnpike Co. v. P. & T. R. Co.*, *supra*. But it is claimed by respondent that the instruction should follow the testimony; that an engine supplied, as it was claimed the "I. E. James" was, with the best and most suitable appliances and skillfully managed, would not throw sparks from the smoke stack that would kindle a fire. That the leaving out this qualification was calculated to mislead the jury and justified the refusal of the entire instruction. So far as the remaining portions of the instruction have any bearings on the case, the prin-

20

ciples therein enunciated were substantially given in other instructions. The defendant, under the law, has the right to use fire, to generate steam and emit sparks from its engines. But it has no right to carelessly emit sparks in such a manner as to set fire to property along the line of its road. If it does it is negligence, for which it is liable in damages to the person whose property is thus destroyed. The instruction without qualification, if not erroneous, was certainly calculated to mislead the jury to the prejudice of plaintiff, and was therefore properly refused.

11. The fourth instruction, asked by defendant and refused by the court, was substantially given in defendant's fifth instruction. The law in reference to the amount of care, skill, diligence and foresight, required of defendant, was correctly given to the jury.

12. The court did not err in refusing to instruct the jury that if plaintiff and his assignors by their *ordinary* negligence contributed to produce the injury, the plaintiff could not recover. The rule of law, in cases of this character, which releases the defendant from responsibility for damages on account of the negligence of the plaintiff, is limited to cases where the act or omission of the plaintiff was the *proximate* cause of the injury. *Flynn* v. *S. F. & S. J. R. Co.*, 40 Cal. 19; *Isbell* v. *N. Y. & N. H. R. R. Co.*, *supra,* and other authorities therein referred to.

13. Did the court err in charging the jury, of its own motion, that the rights of defendant should be carefully limited? "The ordinary occupation and business of a railroad company," said the court, "is in a word, lawful. In its ordinary business it may use the destructive element of fire and the prodigiously expansive power of steam and carry these agencies while in full operation anywhere, and along its line of track. Such rights are exceptional among ordinary human pursuits and business. Hence the necessity which arises that such employment and rights should be *carefully*

*limited,* and operated constantly and diligently with just re-
gard to the rights of others." The right of defendant to
run and manage its engines is absolute; such rights are not
exceptional among the ordinary human pursuits and busi-
ness. In nearly every state, as in this, laws have been
passed, authorizing railroad companies "to take, transport,
carry and convey persons and property on their railroad, by
the force and power of steam." In conducting such busi-
ness the defendant was doing precisely what the law author-
ized it to do. The defendant, and all other persons or cor-
porations engaged in said business, is entitled, the same as
individuals engaged in the various other occupations, to
have its rights protected. The maxim of the law, *sic utere
tuo, ut alienum non laedas,* has as just an application to cor-
porations created by legislative authority as to private per-
sons in the use and control of their property. Therefore
defendant's business should, as the instruction states, "be
operated constantly and diligently with just regard to the
rights of others." It is the manner in which the property
of defendant is used that is to be limited, not the right to
use it. The law in conferring the right to use an element
of danger, protects the person using it, except for an abuse
of his privilege. But in proportion to the danger to others
will arise the degree of caution and care he must use who
exercises the privilege. The greater the danger the higher
the degree of vigilance demanded and the more efficient
must be the means to secure safety. It is the duty of a rail-
road company using, as they do, such dangerous machines,
and running in close proximity to the property of others,
along its line of track, to use the utmost vigilance and fore-
sight to avoid injury. If the locomotive symbolizes enter-
prise and attests the march of improvement and civilization,
it by no means follows, that either the business or social
interests of the country are advanced by refusing to limit
its destructive tendencies, and to protect life and property

against its misuse. It is the duty of those who use such hazardous agencies to control them carefully, to adopt every known safeguard, and to avail themselves from time to time of every improved invention to lessen their danger to others.

Could the language used by the court have been considered by the jury in the light which the learned and ingenious counsel for the defendant seek to place upon it? I think not. In the desire of exhibiting an originality of thought, and in the statement of abstract principles, we often find in the expression of courts, language that ought not to have been used without qualification; but which when carefully considered in connection with all of its surroundings convinces the mind that it could not have misled the jury or prejudiced the parties to the action. Is not this true of the language under review? Standing alone it is subject to the criticism of counsel. But when we examine it in the connection where it is used it becomes apparent that the jury understood from it that in the exercise, employment and use of this right which was dangerous in its character, and in this respect exceptional among human pursuits and business, the defendant was carefully limited by the law, "with just regard to the rights of others." This makes it consistent with the other portion of the court's charge and harmonizes it with the instructions asked by plaintiff. .

14. The court after instructing the jury that railroad companies must use the best appliances to prevent the scattering of fire, said: "But it is to be observed, that such appliances are not required to the extent of materially impairing the reasonable use of a locomotive engine." This is claimed to be erroneous. In my opinion there is no substantial objection urged by counsel. Nor can any be given to the use of this language. The use of such appliances and the exercise of such care, as the law requires, does undoubtedly, to some extent impair the use of an engine.

15. The court did not err in charging the jury that a railroad company "must be diligent in keeping its track and right of way clear of such combustible matter as is liable to be easily ignited." If it was, as claimed by defendant, foreign to the issues in this case, it could not have misled the jury; and if applicable, it stated the principle of law correctly.

16. It was not erroneous to instruct the jury that a railroad company "must be especially diligent to prevent the escape of fire and sparks from its engines, when in the immediate neighborhood of combustible property."

17. "But it not unfrequently occurs that the same testimony, which proves the injury, proves also the fact of negligence, without recurrence to further evidence in that particular in support of a recovery." It could not have been understood from the use of this language, as claimed by defendant's counsel, that proof that defendant caused the fire was sufficient to warrant the jury in coming to the conclusion that it did not occur in any way except through the defendant's negligence. The jury were repeatedly told that in addition to this fact, it must also appear from the evidence that the fire was caused by defendant's negligence. The case was tried upon this theory. The jury must have so understood it and could not possibly have been misled by this general observation, somewhat unhappily expressed. Wright, J., in *Field* v. *N. Y. C. R. R.*, states the rule correctly: "It often occurs, as in this case, that the same evidence which proves the injury shows such attending circumstances as to raise a presumption of the offending party's negligence, so as to cast on him the burden of disproving it."

18. The last objection, presented by defendant's counsel, is that the "evidence is insufficient to justify the verdict." With reference to the cause of the fire, I think, although the testimony is circumstantial, that it all tends to show that the fire must have been caused by the dropping of coals

from defendant's engine. It is unnecessary to recapitulate the particular testimony upon which this belief is founded. The circumstances all point one way and seem to be inconsistent with any other reasonable conclusion. Not only the weight of the evidence, but all the evidence, tends to support the verdict upon this ground. Upon the question of negligence the defendant certainly made a very strong case. It offered testimony showing that the best appliances were used to prevent the emission of sparks or the dropping of coals. That not only ordinary care and prudence, but extra care and caution were used by all the servants and employees of defendant in running and managing its engines, especially in passing through this particular wood-yard. The "I. E. James," the offending engine, was shown to be in perfect condition on the day of the fire, and its engineers and fireman testified that on the particular occasion of the fire they exercised extra care and caution. In fact it would, perhaps, be difficult for a railroad company to offer any further proof upon these points. But the answer to the argument of counsel for defendant is found in the simple statement of the fact that there was some evidence, offered on the part of plaintiff, which tended to show that the engines of defendant were not equipped with the best appliances in general use. The fact that fire did escape from the engine tended strongly to support this evidence. It also tended to establish the fact that there was some negligence in the management of the engine.

Under the familiar rule of law, frequently recognized by this Court, there being a substantial conflict in the evidence, the verdict must stand. I have carefully considered each and every point made by appellant, and given the whole case that attention which its importance demanded, and have arrived at the conclusion that the case was fairly tried and decided upon its merits.

The order refusing a new trial is affirmed.