GEORGE ZIMMER, Administrator, etc., Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Railroad crossing — negligence — ringing bell and sounding whistle — not the entire duty of the company.*

A railroad company has not discharged its whole duty to the public, by simply causing the bell to be rung, or the whistle sounded for the distance required by statute, before crossing a street or highway, and particularly in populous cities and villages.

Appeal from an order of the Special Term, denying a motion for a new trial upon a case and exceptions, and also an appeal from a judgment in favor of the plaintiff, entered upon the verdict of a jury, in an action for injuries caused by the defendant, resulting in the death of the plaintiff's intestate.

*Harris & Cook*, for the appellant.

*Ripsom & Terry*, for the respondent.

E. Darwin Smith, J.:

At the close of the plaintiff's evidence a motion was made by the defendant's counsel for a nonsuit, which was denied and an exception taken, and the same motion was renewed and denied at the close of the defendant's evidence and exception duly taken.

These exceptions present the only question raised in the case for our decision.

The place where the accident occurred was at a railroad crossing of a public and much traveled street in the city of Rochester. No flagman was watching and guarding the crossing at the time, though he was customarily employed there in the daytime. The engineer in charge of the locomotive causing the injury, had just backed his engine from the turn-table and over switches situate just east of Hudson street, on which the accident occurred, across said street, and having reached his proper track had stopped and started forward, and was moving eastwardly, sitting on the right hand or south side of his engine, and not in a position to see persons approaching to cross said track in Hudson street from the north. He had with him a fireman and a brakeman on said engine. Whether the bell was rung at the time, and in a manner adapted, and requisite to give due warning of the approach of said engine, and whether the engine was moving at a proper and allowable rate of speed under the city ordinance, and whether the plaintiff's son was negligent in attempting to cross the track at the time and under existing circumstances, and whether the defendant's engineer and the other men on the engine and tender, exercised due care in approaching and crossing said street to avoid a collision with the plaintiff's wagon, were all questions of fact and more or less in dispute.

The degree of care required of railroad companies, in crossing with their locomotives and trains much traveled public streets in a city or populous village, is obviously much greater than is required in crossing an ordinary highway in the country.

The restriction imposed by the ordinance of the city of Rochester, forbidding engineers upon railroads from running their trains at a rate of speed over eight miles an hour within the limits of said city, was obviously designed to secure·such care and caution in the passage of trains over the streets of said city, as would be likely to prevent many accidents and injuries like the one in question in this action. The jury were charged in light of this consideration, that if they were satisfied by the evidence that under the circumstances of the case the persons in ·charge of the engine omitted to take reasonable care when they approached the street, and while they were crossing it to avoid collisions with passengers in the highway, and such omissions caused the accident, the defendant was chargeable with negligence. This charge assumes what I think is clearly the law, that a railroad company has not discharged its whole duty to the public by simply causing the bell to be rung or the whistle to be sounded for the requisite distance before crossing a street or highway, required by the statute, and particularly in populous cities or villages.

In the case of *Costello* v. *The Syracuse and Binghamton Railroad Company* (65 Barb., 103) we held that " it was the duty of railroad companies to supply their trains with brakes of the most approved kind, and that it was no more than reasonable to require them to run their trains through cities and villages at such moderate rate of speed, as that by the use of brakes the trains might speedily be stopped, so that neither persons nor property should be exposed to injury."

The cases of *Fero* v. *The Buffalo and State Line Railroad Company* (22 N.Y., 209) and *Beisiegel* v. *New York Central Railroad Company* (34 id., 628), assert the same rule in respect to the higher degree of care and caution which should be exercised by railroad companies running their cars through cities and villages.

How far in this case the obstruction arising from the erections on both sides of Hudson street, and the standing locomotive on a track north of the one on which the engine was moving which did

the injury, and a large tree, standing on the west side of Hudson street, near the railroad, intercepted the sight of plaintiff's son in approaching and crossing the track; and how far, when he stopped and looked both ways, and saw no train advancing in either direction, he was influenced in the belief that it was safe to cross the street; and how far, also, he was induced to make such attempt by reason of the absence of any flagman at such crossing, were facts for the consideration of the jury on the question of the plaintiff's vigilance and care to avoid any injury to himself from a collision with cars on said track. Evidence in respect to the custom of the defendant to keep a flagman stationed in the daytime at Hudson street crossing was given on both sides, without objection, and was before the jury, who were properly instructed by the judge, that there was no statutory requirement that a railroad company should keep a flagman at its crossing. The judge was not asked to give any other instruction to the jury on this subject, and there is no exception to his charge or refusal to charge in respect to this question.

In McGrath against this defendant (59 N. Y., 468), the evidence showing that "the defendant had been accustomed to keep a flagman all the time at the crossing where the injury occurred, but that he was not there at the time of the accident," was objected to at the trial as immaterial and incompetent, and the circuit judge admitted it as a circumstance bearing upon the plaintiff's negligence, subject to the defendant's exception.

The Court of Appeals held that the reception of this evidence, under the objection and exception, was error. But this does not imply that any error is committed at the Circuit in not excluding such evidence from the jury, when it has been received without objection, and no ruling of the court upon it has been asked or made. In such case it stands like all evidence before the jury for their consideration, for what it is worth.

The circumstances attending the accident in this case involve a variety of considerations proper for the decision of the jury. The young man who was driving the plaintiff's horse was killed, and his story cannot be told. What he knew or saw can only be inferred from evidence drawn from a number of witnesses. He certainly stopped a short distance before he drove upon the railroad track and looked and listened, and saw nothing to obstruct his

crossing, when he started up his horse to drive over the track. He may have seen the locomotive which caused his death, and heard the bell upon it, as it was backing westward, but this would not deter him from the attempt to cross, because it was moving away from the street and the crossing. This locomotive and tender moved westward about 300 feet, and was then switched on to another track, and started immediately eastward, and came quickly in collision with the horse and wagon. As the engine reversed its course and came suddenly back toward Hudson street, the deceased, probably before he saw the change, had started to cross the track, and may have been so advanced upon the crossing as to have been incapable of controlling his horse, or saving himself when he was struck. A witness who saw the collision testified that just before it occurred he saw the horse on his hind feet, plunging and trying to get away, and looking like a runaway horse; and other witnesses testify that the horse, after he was on the track, became utterly uncontrollable.

The facts, we think, were not so clearly undisputed, in respect to the questions upon which the defendant's liability depended, as to make it the duty of the circuit judge to take the case from the jury. (*Hackford* v. *N. Y. C. R. R. Co.*, 53 N. Y., 654; *Haycroft* v. *The Lake Shore and South. Mich. R. R.*, 5 N. Y. Sup. Court Reports, 49; affirmed in Court of Appeals [not yet reported] February, 1876.)

The judgment should be affirmed.

Present — MULLIN, P. J., SMITH and NOXON, JJ.

Judgment and order affirmed.